**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

In re:                                                  )
                                                        )
**FRANCHISE SERVICES OF NORTH**          )          **CASE NO. 17-02316-EE**
**AMERICA INC.**                                  )          **Chapter 11**
                                                        )
**Debtor**                                          )
_____)

### APPLICATION OF THE DEBTOR FOR AUTHORITY TO RETAIN
### AND EMPLOY EQUITY PARTNERS HG LLC

Franchise Services of North America Inc., the Debtor and Debtor-in-possession herein

(the "*Debtor*" or the "*Company*" or "*FSNA*"), by and through its undersigned attorneys, files

this *Application of the Debtor for Authority to Retain and Employ Equity Partners HG LLC,* and

in support thereof, presents the following facts to the Court:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction of the subject matter herein and the parties hereto

pursuant to 28 U.S.C. §§ 157 and 1334; 11 U.S.C. §§ 105, 328, 363, 365, 1107 and related

statutes and rules, as well as various orders of reference.  This is a core proceeding pursuant to 28

U.S.C. § 157(b)(2)(A), (N) and (O).

### INTRODUCTION

2.      On June 26, 2017 (the "*Petition Date*"), the Debtor filed a voluntary petition for

relief, and thereby commenced a case (the "*Bankruptcy Case*") under chapter 11 of title 11 of the

United States Code (the "*Bankruptcy Code*"), in the United States Bankruptcy Court for the

Southern District of Mississippi (the "*Bankruptcy Court*").  Pursuant to Sections 1107(a) and

1108 of the Bankruptcy Code, the Debtor is operating its business and managing its property as

Debtor-in-possession.

3.     No trustee or examiner has been appointed, and no official committee of creditors or equity interest holders has been established.

4.     The Debtor is a Delaware limited liability company with its principal place of business at 1052 Highland Colony Parkway, Suite 204, Ridgeland, Mississippi.

5.     Additional information about the Debtor's business and the events leading up to the Petition Date can be found in the *Declaration of Thomas P. McDonnell, III, in Support of the Debtor's Chapter 11 Petition and First Day Pleadings and Applications* [Dkt. # 7] (the "*McDonnell Declaration*") which is incorporated herein by reference.

## RELIEF REQUESTED

6.     The Debtor wishes to employ Equity Partners HG LLC ("*Equity Partners*"), a Delaware limited liability corporation, pursuant to 11 U.S.C. § 328(a) for the purpose of assisting the Debtor in selling the Debtor's stock in U-Save Holdings, Inc. (the "Stock") during the next 90-day period, on a timetable and schedule as determined by Equity Partners, the Chief Restructuring Officer, and the Debtor's bankruptcy counsel.

7.     The Debtor has selected Equity Partners because Equity Partners (and its predecessor entities) has substantial experience and a proven track record in the sale of financially distressed companies and assets in a bankruptcy context. Equity Partners operates on a national basis and has completed transactions in more than 44 states and has attracted investors in its transactions from the United States, Mexico, Europe, the Pacific Rim and South America.

8.     Equity Partners specializes in sales of assets of financially troubled companies; and has more than twenty eight (28) years of experience in assisting over 450 financially troubled companies, including more than 200 in Chapter 11 in the United States Bankruptcy Courts in over 67 Districts. Further, Equity Partners has substantial experience in advertising and marketing businesses or assets owned debtors involved in chapter 11 bankruptcy cases

2

9.     Further, the Debtor's professionals have had prior personal experience with Equity Partners in several Chapter 11 bankruptcy cases and have seen first-hand the results Equity Partners has obtained for bankruptcy estates, creditors, and parties in interest in Chapter 11 cases.

10.     If approved by this Court, this engagement will be led by Kenneth W. Mann with Equity Partners, who, although he will involve others within Equity Partners, will be the point of contact with the Debtor and its professionals and will oversee this sales process.

11.     The professional services to be rendered by Equity Partners are set forth in the Agreement between the Debtor and Equity Partners (the "*Agreement*"), a copy of which is attached hereto as **Exhibit A**.

12.     As set forth in the Affidavit of Kenneth W. Mann, a copy of which is attached hereto as **Exhibit B**:

(a)     Neither Kenneth W. Mann (the principal contact with Equity Partners who will be working on this matter), nor any associate of Equity Partners nor Equity Partners has any connection with the above-named bankruptcy estate, its creditors, or any party in interest, or their respective attorneys or accountants or with the Office of the United States Trustee or any employees of the Office of the United States Trustee which are prohibited, or which would interfere with or hinder the performance of Equity Partners' duties herein, although Equity Partners' personnel have been engaged in other bankruptcy matters for some of the professionals of the Debtor;

(b)     Equity Partners represents no interest adverse to the Debtor or to the bankruptcy estate in matters upon which Equity Partners is to be engaged; and

3

(c)     Equity Partners is a "disinterested person" within the meaning of 11 U.S.C. § 101 (14).

13.     Equity Partners has advised the Debtor of its willingness to serve as its agent for the purpose of advertising, marketing and selling the assets of the Debtor as a going concern.

14.     Equity Partners will be paid a fee for its services pursuant to 11 U.S.C. § 328(a) as more fully set forth in the Agreement. The fee is based on the total investment and/or sale of assets the Debtor listed in the Agreement. In summary, Equity Partners will be paid a fee in cash at settlement on any investment and/or sale of assets closed and funded, or upon confirmation of a reorganization plan, for any offers received under the terms of the Agreement, and Equity Partners' fee shall be $100,000.00 plus eight percent (8%) of any amount in excess of the purchase price outlined in the term sheet dated June 26, 2017, from Trace Residential Properties LLC, or its designee, or a subsequent term sheet determined to be the "Stalking Horse Bid."

15.     Furthermore, Equity Partners shall be entitled to its fee even if a buyer purchases the assets, or a claim directly from a secured creditor. Equity Partners shall be entitled to receive its fee from any purchase, refinance, equity investment, joint venture or restructuring completed within twelve (12) months from the effective date of the Agreement by/with a prospect identified during the term of the Agreement

16.     Additionally, the Debtor will pay to Equity Partners an amount not to exceed $20,000.00 pursuant to Equity Partners' budget for out-of-pocket expenses for costs incurred by Equity Partners for preparation, marketing, travel and conduct of the sale. These fees are strictly for marketing costs such as printing, mailing, telephone and travel related expenses to meet investors and to provide due diligence materials to prospects. If Equity Partners' expenses

4

exceed $20,000.00, any amount in excess of $20,000.00 will be the responsibility of Equity Partners, and the Debtor will not have any responsibility therefor.

WHEREFORE, the Debtor requests that its Application to employ Equity Partners to represent the Debtor in the marketing and public sale of its business and its assets be approved by the Court and that the Debtor be authorized to fund the budget for expenses. The Debtor prays for such other relief as the Court deems just and proper.

THIS, the 30th day of June 2017.

Respectfully submitted,

**FRANCHISE SERVICES OF NORTH AMERICA INC.**

By: *s/ Stephen W. Rosenblatt*
Stephen W. Rosenblatt (Miss. Bar No. 5676)
Christopher R. Maddux (Miss. Bar No. 100501)
J. Mitchell Carrington (Miss. Bar No. 104228)
Thomas M. Hewitt (Miss. Bar No. 104589)
BUTLER SNOW LLP
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
Telephone: (601) 985-4415
Steve.Rosenblatt@butlersnow.com
Chris.Maddux@butlersnow.com
Mitch.Carrington@butlersnow.com
Thomas.Hewitt@butlersnow.com

ATTORNEYS FOR THE DEBTOR

## CERTIFICATE OF SERVICE

I certify that the foregoing Application was filed electronically through the Court's ECF

system and served electronically on all parties enlisted to receive service electronically and was

separately served by e-mail on the following:

Ronald H. McAlpin, Esq.
Assistant United States Trustee
501 East Court Street
Suite 6-430
Jackson, MS 39201
Ronald.McAlpin@USDOJ.gov

Office of the United States Trustee
501 East Court Street
Suite 6-430
Jackson, MS 39201
USTPRegion05.AB.ECF@usdoj.gov

The 20 Largest Unsecured Creditors identified on the attached **Exhibit C** hereto.

SO CERTIFIED, this the 30th day of June 2017.

/s/ Stephen W. Rosenblatt
STEPHEN W. ROSENBLATT

## Exhibit A

*Agreement between the Debtor and Equity Partners*

## AGREEMENT BETWEEN DEBTOR AND
## EQUITY PARTNERS HG LLC

THIS AGREEMENT is made this 30th day of June, 2017 by and between Franchise Services of North America Inc., Debtor and Debtor-in-Possession ("Debtor"), Case # 3:17-bk-2316, in the United States Bankruptcy Court for the Southern District of Mississippi (the "Court"), and Equity Partners HG LLC ("Equity Partners"), a Delaware limited liability company.

### RECITALS

WHEREAS, Debtor is in Chapter 11 proceedings (#3:17-bk-2316) pending in the Court and desires to sell or otherwise dispose of the Debtor's stock in U-Save Holdings, Inc. (the "Assets"); and

WHEREAS, Equity Partners is an enterprise specializing in turnarounds, financial restructuring, consulting, refinancing, sales as going concerns, purchase of chattels and real property, liquidation of assets of financially troubled companies; and

WHEREAS, Equity Partners is an enterprise with over twenty eight years of experience in assisting over 450 financially troubled companies, including more than 200 in Chapter 11 in the United States Bankruptcy Courts in over 67 Districts, and

WHEREAS, Equity Partners has substantial experience in advertising and marketing for the purposes of locating investors and joint venture partners, selling as "going concerns" or otherwise disposing and refinancing of major properties, including properties and related establishments owned or leased by debtors involved in bankruptcy proceedings; and

WHEREAS, Debtor and Equity Partners desire to enter into this Agreement regarding the services to be performed by Equity Partners and the compensation to be paid to Equity Partners for its services;

NOW, THEREFORE, in consideration of the promises herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Debtor and Equity Partners hereby agree, subject to all the terms, covenants, conditions and provisions hereinafter set forth, as follows:

1. EXCLUSIVE RIGHT TO RESTRUCTURE, ADVERTISE AND MARKET, AND TO REFINANCE, SELL, LEASE OR OTHERWISE DISPOSE OF THE ASSETS. Debtor hereby retains Equity Partners as Debtor's exclusive agent to sell or otherwise dispose of the Assets. Debtor acknowledges that Equity Partners will be entitled to its fee regardless of who the buyer is or who brought the buyer to the transaction. The term of Equity Partners' exclusive rights shall begin as of the date that this Agreement is approved by

1

the Bankruptcy Court and shall continue for until the later of: (i) ninety (90) days from the date of this Agreement, or (ii) as long as any prospect identified during the 90 days is under a letter of intent for any transaction regarding the Assets.

2. SERVICES. Equity Partners shall perform the following services:

    (a) Review and inspect the Assets.

    (b) Prepare a program which may include marketing the Assets through newspapers, magazines, journals, letters, fliers, signs, telephone solicitation, the Internet and/or such other methods as Equity Partners may deem appropriate.

    (c) Prepare advertising letters, fliers and/or similar sales materials, which would include information regarding the Assets.

    (d) Endeavor to locate parties who may have an interest in acquiring the Assets.

    (e) Circulate materials to interested parties regarding the Assets, after completing confidentiality documents.

    (f) Respond, provide information to, communicate and negotiate with and obtain offers from interested parties and make recommendations to Debtor as to whether or not a particular offer for the Assets should be accepted.

    (g) Communicate regularly with Debtor in connection with the status of Equity Partners' efforts with respect to the disposition of the Assets. This shall include a weekly written report to all Parties-in-Interest.

    (h) Recommend to Debtor the proper method of handling any specific problems encountered with respect to the marketing or disposition of the Assets.

    (j) Perform related services necessary to maximize the proceeds to be realized for the Assets.

The Debtor will furnish, or cause to be furnished, to Equity Partners such information as Equity Partners reasonably requests in connection with the performance of its services hereunder (all such information so furnished is referred to in this Agreement as the "Information"). The Debtor understands and agrees that Equity Partners, in performing its services hereunder, will use and rely upon the Information as well as publicly available information regarding the Debtor and that Equity Partners does not assume responsibility for independent verification of the accuracy, completeness, or reasonableness of any information, whether publicly available or otherwise furnished to it, concerning the Debtor, including, without limitation, any financial information, forecasts or projections, considered by Equity Partners in connection with the rendering of its services. The Debtor represents that all information furnished by it, on its request

2

or on its behalf to Equity Partners, whether such information relates to the Debtor or otherwise, will be accurate and complete in all material respects and will undertake to update such information as necessary throughout the term of this engagement. Accordingly, Equity Partners shall be entitled to assume and rely upon the accuracy and completeness of all such information and is not required to conduct a physical inspection of any of the properties or assets, or to prepare or obtain any independent evaluation or appraisal of any of the assets or liabilities, of the Debtor. With respect to any financial forecasts and projections made available to Equity Partners with respect to the Debtor and used by Equity Partners in its analysis, Equity Partners shall be entitled to assume that such forecasts and projections have been reasonably prepared on bases reflecting the best currently available estimates and judgments of the management of the Debtor, as the case may be, as to the matters covered thereby.

In connection with the services described in this Section 2, the Debtor authorizes Equity Partners, as the Debtor's representative, to transmit the Information to potential parties to a transaction and to execute on behalf of the Debtor a confidentiality agreement, to be entered into by such parties. The Debtor hereby acknowledges that all Information will be provided by or based upon information provided by the Debtor or third parties, and that the Debtor will be solely responsible for the contents thereof.

The Debtor shall promptly file an application seeking the entry of an order approving the Agreement and authorizing Debtor to retain Equity Partners pursuant to the terms of the Agreement as professional persons pursuant to Sections 327 and 328(a) of the Bankruptcy Code, the Bankruptcy Rules, and any applicable local rules and order of the Court. Equity Partners reserves the right to terminate its obligations under this Agreement if the Court enters an order that is inconsistent with this Agreement or which deletes key provisions of same. Equity Partners' services shall commence upon execution of the Agreement and the entry of an order authorizing the Debtor to engage Equity Partners (the "Approval Order"). The proposed advertising and marketing program shall be submitted for Debtor's approval prior to implementation. The development of the advertising and marketing program shall be the sole responsibility of Equity Partners.

3. OFFERING PROCEDURE. Equity Partners shall negotiate with all prospects and solicit offers for the potential sale of the Assets with the following procedures:

(a) All communications and inquiries regarding the Assets shall be directed to Equity Partners.

(b) In order to be considered, all offers must be accompanied by appropriate financial material showing ability to close a transaction and include a deposit where deemed necessary. If a deposit is forfeited to the Debtor as liquidated damages because a buyer/investor fails to close on a transaction, Equity Partners shall be entitled to retain, as a fee, the lesser of:

3

(i)  50% of the deposit, or

(ii)  An amount equal to what the fee would have been, under Sections 5 and 6 of this Agreement, had the transaction closed.

(c)  The Debtor shall have the right to:

(i)  determine in its sole discretion which offer is to be accepted, subject to the approval by the Bankruptcy Court; and

(ii)  reject, at any time, any and all offers which in the Debtor's sole discretion is deemed to be inadequate or insufficient or not in conformity with the terms and conditions as it may determine to be in the best interest of the Debtor.

4. EXPENSES. Equity Partners will prepare a budget for advertising, marketing, travel, and any other expenses, which shall not exceed twenty thousand dollars ($20,000), which amount shall be advanced to Equity Partners by the Debtor immediately following the entry of the Approval Order.  These monies are strictly for marketing costs such as printing, mailing, telephone and travel related expenses to meet investors and to provide due diligence materials to prospects.

5. GROSS VALUE.  The term "Gross Value" as used in this Agreement shall include the aggregate consideration paid under or pursuant to any Sale Transaction or chapter 11 Plan. Gross Value includes but is not limited to:

(a) Cash, stock, equity interests, membership interests and or partnership interests;

(b) Any credit bids made by secured parties;

(c) Any payments made in installments;

(d) Any notes, securities and other property;

(e) Any other payment made or in respect to the equity interests; and

(f) Any consideration payable under consulting agreements and/or non-compete

agreements.

The fees and expenses of Equity Partners, including but not limited to those under Sections 3(b) and 4 of this Agreement, and all other closing costs and/or adjustments, including adjustments and/or payments of whatever kind to lien holders, secured parties, or otherwise shall not be deducted when computing "Gross Value" or the fee to be paid Equity Partners.

6. EQUITY PARTNERS FEE. Equity Partners' fee will be $100,000 plus 8% of any amount in excess of One Million Dollars (USD) ($1,000,000.00 – the purchase price outlined in the term sheet dated June 26, 2017, from Trace Residential Properties LLC, or its designee, or a subsequent term sheet determined to be the "Stalking Horse Bid."

4

(a) Equity Partners shall be entitled to its fee even if a buyer purchases the Assets, or a claim directly from a secured creditor.

(b) Equity Partners shall be entitled to receive its fee from any purchase, refinance, equity investment, joint venture or restructuring completed within 12 months by/with a prospect identified during the term of this Agreement.

(c) The fee to Equity Partners shall be paid in cash at settlement, and such payment shall be a condition of, the closing of any transaction.

7. INDEMNITY.  In consideration of Equity Partners' services as financial advisor and investment banker under this letter agreement, the Debtor agrees to indemnify and hold harmless Equity Partners and each person, if any, who controls Equity Partners (within the meaning of the Securities Act of 1933, as amended, and the Securities Exchange Act of 1934, as amended) against any lawsuits, claims, losses, damages or liabilities (or actions or proceedings in respect thereof) and costs and expenses to which Equity Partners or such controlling person may become subject to as a result of this agreement and subsequent engagement except for any such lawsuits, claims, losses, damages or liabilities arising from (i) the gross negligence or willful misconduct of Equity Partners, or (ii) the negligence of Equity Partners resulting in death or grave bodily injury.   The provisions of this Section 7 shall survive the termination of Equity Partners' engagement under this agreement and shall be binding upon the Debtor, and its stockholders, and their successors and assigns (the "Indemnifying Party").

8. PUBLICITY.  In the event of consummation of any transaction, Equity Partners shall have the right to disclose its participation in such transaction, including, without limitation, the placement of "tombstone" advertisements (which may include a reproduction of the Debtor's logo and a hyperlink to the Debtor's website) in financial and other newspapers and journals as well as Equity Partners' website.

9. NOTICES. All notices, statements, demands, requests, consents, communications and certificates from any party hereto to the other, shall be made in writing and sent to:

(a) If intended for the Debtor:                    (b) If intended for Equity Partners:

Jonathan J. Nash, Chief Restructuring Officer     Kenneth W. Mann
Franchise Services of North America Inc.           Heritage Equity Partners
2905 San Gabriel, Ste. 203                         16 N. Washington Street, Suite 102
Austin, Texas 78705                                Easton, Maryland 21601

With a copy to Debtor's counsel, Stephen W. Rosenblatt, Butler Snow LLP, 1020 Highland Colony Parkway, Ste. 1400, Ridgeland, MS 39157

Notices may be sent to such addresses or entities as either party hereto may from time to time direct by service of notice on the other party.

10. NONASSIGNABILITY.  Neither party hereto shall assign this Agreement or any of its rights or interest hereunder without first obtaining the other party's written consent.

5

11. TIME OF THE ESSENCE.    Time, whenever mentioned herein, shall be of the essence of this Agreement.

12. ENTIRE AGREEMENT.  This is the entire Agreement between the parties hereto regarding the transaction contemplated hereby and there are no other terms, covenants, conditions, provisions, warranties, representations or statements, oral or otherwise, of any kind whatsoever.  Any Agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of this Agreement in whole or in part unless such agreement is in writing and signed by the party against whom enforcement of the change, modifications, discharge or abandonment is sought.

13. HEADINGS.  The headings, if any, incorporated in this Agreement are for the convenience and reference only and are not part of this Agreement and shall not in any way control, define, limit or add to the terms and conditions hereof.

14. GOVERNING LAW.  This Agreement shall be construed, interpreted and governed by the laws of the state of Mississippi.

15. COUNTERPARTS.    This Agreement may be executed in any number of counterparts, each of which shall be original, but such counterparts together shall constitute one and the same instrument.

16. LEGAL CONSTRUCTION. In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, the invalidity, illegality, or enforceability shall not affect any other provision of this Agreement and this Agreement shall be construed as if the invalid, illegal, or unenforceable provision had never been contained in it.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement under seal, as of the day and year first above written, SUBJECT TO THE APPROVAL OF THE UNITED STATES BANKRUPTCY COURT.

DEBTOR:

Franchise Services of North America Inc.

By : _____

Name:  Jonathan J. Nash, Chief Restructuring Officer

EQUITY PARTNERS HG LLC

By : _____

Kenneth W. Mann, Senior Managing Director

37100006

6

## Exhibit B

*Affidavit of Kenneth W. Mann*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

In re:                                              )
                                                    )
**FRANCHISE SERVICES OF NORTH**                     )          **CASE NO. 17-02316-EE**
**AMERICA INC.**                                    )          **Chapter 11**
                                                    )
Debtor                                              )
_____)

## AFFIDAVIT OF KENNETH W. MANN

### STATE OF MARYLAND

### COUNTY OF TALBOT

Kenneth W. Mann, Senior Managing Director of Equity Partners HG LLC, being duly sworn, deposes and says upon his oath as follows:

1.      Equity Partners HG LLC has substantial experience in the sale of assets of businesses, on a going concern basis, both in and out of the jurisdiction of the bankruptcy court.

2.      Neither I, any associate of Equity Partners HG LLC, nor Equity Partners HG LLC, have any connection with the above named estate, its creditors, or any party in interest, or their respective attorneys or accountants.

3.      Neither I, nor any associate of Equity Partners HG LLC, represent any interest adverse to that of the bankruptcy estate or the Debtor-in-Possession in matters upon which Equity Partners HG LLC shall be engaged.

4.      Based on the foregoing, I believe that Equity Partners HG LLC is a "disinterested person" within the meaning of 11 U.S.C. § 101(13).

5.      Affiant has advised the Debtor-in-Possession of the willingness of Equity Partners HG LLC to serve as its agent for the purpose of advertising, marketing, and selling of the Debtor-in-Possession's stock in U-Save Holdings, Inc., and the payment for these services as set forth in the Motion provided to this Court.

DATED: June 30, 2017.

/s/ Kenneth W. Mann

Kenneth W. Mann
Senior Managing Director
Equity Partners HG LLC

SUBSCRIBED AND SWORN TO BEFORE ME, on June 30, 2017.

_____

NOTARY PUBLIC

My Commission Expires:

_____

36420933

****TO BE AMENDED ONCE WE RECEIVE
EXECUTED COPY.

## Exhibit C

### *20 Largest Unsecured Creditors List*

36420432

Fill in this information to identify the case:

| | |
|---|---|
| Debtor name | **Franchise Services of North America Inc.** |
| United States Bankruptcy Court for the: | **SOUTHERN DISTRICT OF MISSISSIPPI** |
| Case number (if known): | **17-02316-ee** |

☐ Check if this is an

amended filing

# Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders
12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **Macquarie Capital 125 West 55 Street New York, NY 10019** | **Kevin H. Marino, Esq.** **(973) 824-8425 (fax)** | **Professional Services** | **Disputed** | | | **$2,500,000.00** |
| **RJ Young 809 Division Street Nashville, TN 37203** | **(615) 515-7533 (fax)** | **Services** | **Contingent Unliquidated Disputed** | | | **$1,100,000.00** |
| **Macquarie Capital 125 West 55 Street New York, NY 10019** | **Kevin H. Marino, Esq.** **(973) 824-8425** | **Professional Services** | **Disputed** | | | **$500,000.00** |
| **David M. Mitchell 100 Forest Avenue Glen Ridge, NJ 07028** | **William F. Ray, Esq.** **(601) 965-1901 (fax)** | **Breach of Contract** | **Contingent Unliquidated Disputed** | | | **$450,000.00** |
| **Stikeman Elliott 445 Park Avenue 7th Floor New York, NY 10022** | **(212) 371-7087 (fax)** | **Professional Services** | **Disputed** | | | **$389,963.31** |
| **Osler, Hoskin & Harcourt TransCanada Tower 450 1st St. SW, Ste 2500 Calgary, Alberta T2P 5H1** | **(403) 260-7024 (fax)** | **Professional Services** | | | | **$351,379.58** |
| **Edinger Associates, PLLC 1875 I Street, NW Suite 500 Washington, DC 20006** | **(202) 747-1691 (fax)** | **Professional Services** | **Disputed** | | | **$291,354.95** |

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

| Debtor | **Franchise Services of North America Inc.** | | | Case number *(if known)* | **17-02316-ee** | |
|---|---|---|---|---|---|---|
| | Name | | | | | |

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| Daniel Raymond Boland 8 Oakleigh Court Norwalk, CT 06853 | Kevin H. Marino, Esq. (973) 824-8425 (fax) | Advancement Demand | Contingent Unliquidated Disputed | | | $276,816.36 |
| Michael John Silverton 508 W 24th St 7N New York, NY 10011-1103 | Kevin H. Marino, Esq. (973) 824-8425 (fax) | Advancement Demand | Contingent Unliquidated Disputed | | | $276,816.36 |
| Horne LLP 1020 Highland Colony Parkw Suite 400 Ridgeland, MS 39157 | (615) 810-8009 (fax) | Professional Services | | | | $86,850.00 |
| J. Michael Linn 1121 N. Halifax Daytona Beach, FL 32118 | W. Thomas McCraney III (601) 510-2939 (fax) | Breach of Contract | | | | $50,000.00 |
| Robert M. Barton 15234 Merlinglen Pl Lithia, FL 35547-3901 | W. Thomas McCraney III (601) 510-2939 (fax) | Breach of Contract | | | | $50,000.00 |
| Young Conaway Stargatt 1000 North King Street Wilmington, DE 19899-0391 | (302) 571-1253 (fax) | Professional Services | Disputed | | | $37,372.18 |
| TSD Rental, LLC Attn:  Charles Grieco 1620-1650 Turnpike St. North Andover, MA 01845 | Charles Grieco (978) 794-1455 (fax) | Services | | | | $25,542.62 |
| State of Nevada Dept of Taxation 1150 College Pkwy No. 115 Carson City, NV 89706 | (775) 684-2020 (fax) | Taxes | Disputed | | | $24,917.17 |
| Canada Revenue Agnecy 875 Heron Road Ottawa, Ontario | (613) 952-3845 (fax) | Taxes | Disputed Subject to Setoff | | | $23,362.95 |
| Horn & Payne, PLLC 1300 Highway 51 Madison, MS 39110 | (601) 853-2878 (fax) | Professional Services | | | | $13,051.25 |

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

Debtor  **Franchise Services of North America Inc.**                          Case number *(if known)*  **17-02316-ee**
        Name

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **Mississippi Mediation & A P. O. Box 2251 Jackson, MS 39225-2251** | **(601) 969-5582 (fax)** | **Robert Sneed - Arbitrator** | | | | **$12,000.00** |
| **State of Michigan Dept. of Treasury PO Box 77000 Detroit, MI 48277-2000** | **(517) 272-5561 (fax)** | **Taxes** | **Disputed** | | | **$10,838.85** |
| **DE Secretary of State PO Box 5509 Binghamton, NY 13902-5509** | **(302) 739-3812 (fax)** | **Taxes** | | | | **$9,520.00** |

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                          Best Case Bankruptcy