---

**SO ORDERED,**

*Edward Ellington*

**Judge Edward Ellington**
**United States Bankruptcy Judge**
**Date Signed: January 17, 2018**

The Order of the Court is set forth below. The docket reflects the date entered.

---

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
# SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: | **CHAPTER 11** |
| **FRANCHISE SERVICES OF NORTH** | **CASE NO. 1702316EE** |
| **AMERICA, INC.** | |

### ORDER ON *DEBTOR'S REQUEST FOR CERTIFICATION PURSUANT TO 28 U.S.C. §158(d)(2)(A) OF A DIRECT APPEAL TO THE COURT OF APPEALS FOR THE FIFTH CIRCUIT OF THIS COURT'S ORDER GRANTING BOKETO'S MOTION TO DISMISS BANKRUPTCY CASE*

**THIS MATTER** came before the Court on the *Debtor's Request for Certification Pursuant to 28 U.S.C. §158(d)(2)(A) of a Direct Appeal to the Court of Appeals for the Fifth Circuit of this Court's Order Granting Boketo's Motion to Dismiss Bankruptcy Case* (Dkt. #259) filed by Franchise Services of North America, Inc. and *Boketo LLC's Opposition to Debtor's Request for Certification Pursuant to 28 U.S.C. § 158(d)(2)(A) of the Order Dismissing this Bankruptcy Case* (Dkt. #265). Having considered the pleadings and Federal Rule of Bankruptcy Procedure

Page 1 of 13

8006(f)(5), the Court finds as follows:[1]

On December 22, 2017, Franchise Services of North America, Inc. (Debtor) timely filed a *Notice of Appeal [Dkt. ##253, 254]* (Dkt. #260) to the United States District Court for the Southern District of Mississippi. Also on December 22, 2017, the Debtor timely filed *Debtor's Request for Certification Pursuant to 28 U.S.C. §158(d)(2)(A) of a Direct Appeal to the Court of Appeals for the Fifth Circuit of this Court's Order Granting Boketo's Motion to Dismiss Bankruptcy Case* (Dkt. #259) (Motion).

In its Motion, the Debtor seeks this Court's certification of a direct appeal to the United States Court of Appeals for the Fifth Circuit pursuant to 28 U.S.C. § 158(d)(2)(A)[2] on this Court's *Memorandum Opinion* (Dkt. #253) and *Final Judgment* (Dkt. #254) (collectively, Opinion). The Opinion was entered on December 18, 2017, and addressed the following pleadings:

1. *Motion of the Macquarie Parties to Dismiss the Chapter 11 Case for Petition Having Been Filed Without Proper Corporate Authority* (Dkt. #121) filed by Macquarie Capital (USA) Inc., Michael John Silverton, and Daniel Raymond Boland; 2. *Joinder of Boketo LLC to the Motion of the Macquarie Parties to Dismiss the Chapter 11 Case for Petition Having Been Filed Without Proper Corporate Authority* (Dkt. #168);

3. *Response and Objection of Franchise Services of North America Inc. to the*

---

[1] Federal Rule of Bankruptcy Procedure 8006(f)(4) provides that oral argument on a request for certification of a direct appeal is not required unless the Court orders otherwise. The Court declines to do so.

[2] Hereafter, all code sections refer to title 28 of the United States Code unless specifically noted otherwise.

*Motion of the Macquarie Parties to Dismiss the Chapter 11 Case and the Joinder of Boketo LLC [Dkt. # 121; 168]* (Dkt. #186);

4.  *The Macquarie Parties' Reply to the Debtor's Response and Objection to their Motion to Dismiss the Chapter 11 Case and the Joinder of Boketo LLC* (Dkt. #206) filed by Macquarie Capital (USA) Inc., Michael John Silverton, and Daniel Raymond Boland; and

5.  *Debtor's Response to the Macquarie Parties' Reply to the Debtor's Response and Objection to their Motion to Dismiss the Chapter 11 Case and the Joinder of Boketo LLC [Dkt. ## 121; 168; 186; 206]* (Dkt. #221).

The Opinion addressed the validity of a blocking provision or golden share given to an equity holder of the Debtor.  A blocking provision or golden share is a relatively new provision created by the credit community in an attempt to work around the prohibition against an entity contracting away the right to file bankruptcy.  In its Opinion, however, the Court found that the Debtor's equity holder Boketo LLC (Boketo) held a valid blocking provision/golden share.   Boketo's blocking provision/golden share is found in § 4(j) of the Debtor's *Certificate of Incorporation*.  Section 4(j) required Boketo's consent prior to the filing of a bankruptcy petition.  Since Boketo was an equity holder, the Court found § 4(j) to be valid and then dismissed the Debtor's bankruptcy case because the Debtor failed to obtain the consent of Boketo prior to filing its bankruptcy petition.

In reaching this decision, the Court analyzed the seven (7) cases the Court and the parties found which have addressed blocking provisions or golden shares.[3]  In its Opinion, the Court

---

[3]*In re Global Ship Systems, LLC*, 391 B.R. 193, 203 (Bankr. S.D. Ga. 2007) (party wearing two hats, as a creditor and an equity holder, held golden share/blocking provision–case dismissed); *In re Bay Club Partners-472, LLC*, Case No. 14-30394, 2014 WL 1796688, at *5 (Bankr. D. Or. May

acknowledged that all seven (7) opinions begin with the general premise that the waiving or contracting away the right to file for relief under the bankruptcy code is contrary to public policy. It is clear from these seven (7) cases, however, that a blocking provision or a golden share will be upheld if it is held by an equity holder.

On January 5, 2018, *Boketo LLC's Opposition to Debtor's Request for Certification Pursuant to 28 U.S.C. § 158(d)(2)(A) of the Order Dismissing this Bankruptcy Case* (Dkt. #265) (Objection) was filed. This Objection was the only pleading filed in response to the Motion.

In its Objection, Boketo argues that the Motion should be denied because the questions the Debtor asks this Court to certify to the Fifth Circuit are "mixed questions of law and fact, and § 158(d)(2)(A) certification is only appropriate for purely legal issues."[4] Further, Boketo argues that there is not an absence of controlling authority from the Fifth Circuit or the Supreme Court of the United States, that the legal issue does not involve conflicting authorities, and that it is not a matter of public importance.

---

6, 2014) (creditor held golden share/blocking provision–motion denied because provision was void); *In re Lake Mich. Beach Pottawattamie Resort, LLC*, 547 B.R. 899, 911-12 (Bankr. N.D. Ill. 2016) (creditor held golden share/blocking provision–motion denied because provision was void); *In re Intervention Energy Holdings, LLC.*, 553 B.R. 258, 262 (Bankr. D.Del. 2016) (footnote omitted) (creditor and equity holder with 1 share of the debtor held golden share/blocking provision–motion denied because provision was void); *In re Tara Retail Group, LLC*, Case No. 17-bk-57, 2017 WL 1788428, at *2 (Bankr. N.D. WV May 4, 2017) appeal dism'd 2017 WL 2837015 (N.D. WV June 30, 2017) (creditor held golden share/blocking provision, however, silence of creditor ratified the debtor's bankruptcy filing–motion denied); *In re Squire Court Partners Ltd P'ship,* 574 B.R. 701, 707 (E.D. Ark. 2017) (equity holder held golden share/blocking provision–motion denied because provision was void); *In re Lexington Hospitality Group, LLC*, Case No. 17-51568, 2017 WL 4118117 (Bankr. E.D. Ky. Sept. 15, 2017) (wholly owned entity of creditor held golden share/blocking provision–motion denied because the entity was not truly independent).

[4]*Boketo LLC's Opposition to Debtor's Request for Certification Pursuant to 28 U.S.C. § 158(d)(2)(A) of the Order Dismissing this Bankruptcy Case*, Case No. 1702316EE, Dkt. #265, p. 2, Jan. 5, 2018.

## A. Statutory Basis

Federal Rule of Bankruptcy Procedure 8006(b),[5] states that "[t]he certification must be filed with the clerk of the court where the matter is pending."[6]  For purposes of Rule 8006, "a matter remains pending in the bankruptcy court for 30 days after the effective date under Rule 8002 of the first notice of appeal from the [Opinion] for which direct review is sought."[7]

The Debtor filed its Motion and *Notice of Appeal [Dkt. ##253, 254]* (Dkt. #260) four (4) days after the Court entered its Opinion.  Pursuant to Rule 8006(a), the Motion was timely filed. Boketo filed its Objection within the fourteen (14) days provided for in Rule 8006(f)(3).  Based upon the preceding, the Court finds that this matter is still *pending* in the Bankruptcy Court and that this Court has jurisdiction of the Motion for purposes of Rule 8006(b).

As required by Rule 8006(f)(2)(A), (B), (C), and (D), the Motion includes facts, a statement of the basis for the certification, the questions to be certified, and the reasons why the direct appeal should be allowed.  While the Motion does not have a copy of the Opinion attached to it as required by subsection E, the Court finds that subsection E is satisfied because the Opinion is attached to the *Notice of Appeal [Dkt. ##253, 254]* (Dkt. #260) filed contemporaneously with the Motion.[8]

Certification of direct appeals under § 158(d)(2) was enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.  This Court may authorize a direct appeal

---

[5]Hereafter, all rules refer to the Federal Rules of Bankruptcy Procedure unless specifically noted otherwise.

[6]Fed. R. Bankr. P. 8006(b).

[7]*Id.*

[8]Both the *Notice of Appeal* (Exhibit A) and Motion (Exhibit B) are attached to this Order as exhibits.

to the Fifth Circuit if it certifies that:

> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

> (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or

> (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken.

28 U.S.C. § 158(d)(2)(A).

"If any of the four conditions precedent are met, the bankruptcy court *shall* make the certification per § 158(d)(2)(B)(ii)." *In re Adkins,* 517 B.R. 698, 699 (Bankr. N.D. Tex. 2014). "The twin purposes of [§ 158(d)(2)] were to expedite appeals in significant cases and to generate binding appellate precedent in bankruptcy, whose caselaw *[sic]* has been plagued by indeterminacy. H.R. Rep. No. 109-31 pt. I, at 148 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 206." *In re The Pacific Lumber Co.,* 584 F.3d 229, 241-42 (5th Cir. 2009).

## B. Application to Case at Bar

### 1. Questions for Certification

In its Motion, the Debtor states the two questions to be certified for direct appeal as:

1. Is it against federal public policy for a creditor to demand and receive the ability to block a debtor corporation from taking bankruptcy if the mechanism the creditor uses to do that is (1) to use a controlled subsidiary to make a minority equity investment in the debtor, and (2) to obtain a provision in the certificate of incorporation giving the subsidiary a power to block any bankruptcy filing?

2. In the alternative, where a certificate of incorporation gives a minority shareholder the right to veto a bankruptcy filing by the corporation, does Delaware law impose on the minority shareholder a fiduciary duty to exercise that right in the best interests of the corporation, and not in the best interests of an affiliated third

party in litigation with the corporation?[9]

The Debtor asserts that these two questions meet the standard for certification of a direct appeal pursuant to § 158(d)(2)(A)(i) and (ii).

As noted previously, Boketo argues that neither question meets the standards for certification of a direct appeal because both questions are not purely legal questions. In a footnote, Boketo states that the "two questions [mischaracterize] the factual record,"[10] but Boketo does not elaborate on this statement nor does Boketo submit proposed language.

The Court agrees with Boketo that the wording of the two questions proposed by the Debtor does not accurately frame the issues. The Court does not, however, agree with Boketo that the underlying questions are not legal questions which would qualify for certification of a direct appeal.

The previously cited case of *In re Adkins* addressed both the framing of the question to be certified and the factual vs. legal argument. In *Adkins*, a creditor filed a motion for a direct appeal, to which the debtor objected. The debtor argued that the questions sought to be certified involved legal and factual matters and that the questions were not framed properly.

As to the framing of the questions, the *Adkins* Court found that neither party had accurately framed the questions. The court found that the case involved a broader legal question, that if properly drafted, qualified to be certified for a direct appeal. As a result, the court drafted the

---

[9]*Debtor's Request for Certification Pursuant to 28 U.S.C. §158(d)(2)(A) of a Direct Appeal to The Court of Appeals for the Fifth Circuit of this Court's Order Granting Boketo's Motion to Dismiss Bankruptcy Case* (Dkt. #259), Case No. 1702316EE, Dkt. #259, p. 2, Dec. 22, 2017.

[10]*Boketo LLC's Opposition to Debtor's Request for Certification Pursuant to 28 U.S.C. § 158(d)(2)(A) of the Order Dismissing this Bankruptcy Case*, Case No. 1702316EE, Dkt. #265, p. 4, n.1, Jan. 5, 2018.

questions which were certified to the Fifth Circuit.[11]

The importance of how a certified question is drafted was demonstrated in the recent Fifth Circuit case of *Peake v. Ayobami (In re Ayobami),* No. 16-20589, 2018 WL 266409 (5th Cir. Jan. 3, 2018). In *Ayobami*, the question certified to the Fifth Circuit was "[m]ay a debtor claiming federal exemptions under § 522 of the Bankruptcy Code *ever* exempt a 100% interest of an asset?"[12] Several times in the opinion, the Fifth Circuit states that it will only answer the specific question certified for appeal. "What the certified question does not ask us to determine, and thus we decline to address, is whether claiming a 100% interest in an asset as exempt allows the debtor to 'walk-away' with the asset itself and potentially benefit from any post-petition appreciation of it."[13] The Fifth Circuit went on to state that even though "[t]his concern seems to be at the heart of the question that the parties wish us to address[,]" the court only answered the question certified to it and no other issue in the bankruptcy court's ruling. Consequently, the Court will draft the questions to be certified to the Fifth Circuit in an attempt to address issues which needs to be decided by the Fifth Circuit.

Boketo argues that only questions of law may be certified for a direct appeal and that the Debtor's questions are not purely legal questions which would qualify for certification of a direct

---

[11]After the bankruptcy court entered its order certifying the appeal to the Fifth Circuit, the creditor timely filed its petition for permission to appeal with the Fifth Circuit. The debtor did not oppose the petition. On March 13, 2016, the Fifth Circuit granted the petition for leave to appeal under § 158(d). The creditor later informed the Fifth Circuit that the matter was settled, but urged the court to affirm the decision of the bankruptcy court. The Fifth Circuit declined to do so and dismissed the appeal without addressing the certified questions. *In re Adkins,* Case No. 1510203, Doc. #00513425103, (5th Cir. Mar. 14, 2016).

[12]*In re Ayobami,* No. 16-20589, 2018 WL 266409, at *1.

[13]*Id.* at *2.

appeal.  The Court again finds guidance from *Adkins* to address this question.  Like the case at bar, *Adkins* involved an unusual fact situation.  In *Adkins,* a creditor filed a third party action against the debtor in an adversary proceeding in another case.  The debtor alleged that the filing of the third party complaint violated the stay, and the court agreed.  The court assessed damages against the creditor in favor of the debtor.  In addressing whether the question for certification was a question of law, the court recognized "that the issue is one that is highly dependent on particular and unusual facts. . .and thus arguable not properly subject of a direct appeal."[14]  But, the court went on to find that the question as framed by the court was proper for a direct appeal because it raised "the broader, more important question of whether the automatic stay covers only those formal actions taken outside the bankruptcy court."[15]

       After reviewing its Opinion, the Court finds that the legal questions below should be certified for direct appeal to the Fifth Circuit:

       1.  Is a provision, typically called a blocking provision or a golden share, which gives
       a party (whether a creditor or an equity holder) the ability to prevent a corporation
       from filing bankruptcy valid and enforceable or is the provision contrary to federal
       public policy?

       2.  If a party is both a creditor and an equity holder of the debtor and holds a
       blocking provision or a golden share, is the blocking provision or golden share valid
       and enforceable or is the provision contrary to federal public policy?

       3.  Under Delaware law, may a certificate of incorporation contain a blocking
       provision/golden share?  If the answer to that question is yes, does Delaware law
       impose on the holder of the provision a fiduciary duty to exercise such provision in
       the best interests of the corporation?

Like the *Adkins'* court, the Court believes the questions above address the broader, and more

---

[14]*In re Adkins,* 517 B.R. at 700.

[15]*Id.*

important legal questions regarding whether a blocking provision or a golden share are valid and enforceable provisions.

### 2. Conditions for a Direct Appeal

In order for the Court to certify a direct appeal to the Fifth Circuit, the Opinion must involve one of the following: (1) a question of law on which there is no controlling decision by the Fifth Circuit or the Supreme Court; or (2) it is a matter of public importance; or (3) the issue is one where there are conflicting decisions; or (4) an immediate appeal may materially advance the progress of the case. 28 U.S.C. § 158(d)(2)(A). *See Adkins,* 517 B.R. at 699. The Court will address each factor separately.

In its Objection, Boketo states several times that there is controlling law on the issue of blocking provisions or golden shares, but Boketo fails to cite to any such opinion from a court of appeals or the Supreme Court. The Court finds that not only is there no controlling decision by the Fifth Circuit or the Supreme Court, but there is also no decision by any of the other courts of appeal. As listed in footnote two (2), there are a total of seven (7) cases which have addressed the validity of a blocking provision or a golden share. Only two of the cases, *Squire Court* and *Tara Retail*[16] were appealed. The *Squire Court* opinion was issued by a district court and was subsequently appealed to the Court of Appeals for the Eighth Circuit. The Eighth Circuit dismissed the appeal on January 5, 2018, as a result of a settlement reached between the parties. *Tara Retail* was appealed to the district court, by that appeal was dismissed on June 30, 2017. Consequently, the Court finds that because there is no controlling decision by the Fifth Circuit (or any other circuit court) or the Supreme Court a condition has been met under § 158(d)(2)(A) to require certification

---

[16]*Supra* note 2, at 3.

of a direct appeal to the Fifth Circuit.

Having found that the questions meet one of the elements of § 158(d)(2)(A) to justify certification of a direct appeal, the Court need not address the other elements. The Court will, however, briefly discuss the other elements.

Blocking provisions and golden shares are relatively new creations. The first case to address the validity of such provisions was issued in 2007, but the remaining six (6) cases were issued after 2014. Since more creditors and/or equity holders are now insisting that they be given blocking provisions or golden shares, it is a matter of public importance to have a circuit court rule on the issue of whether blocking provisions and golden shares are valid and enforceable. Therefore, another condition for certification of a direct appeal has been met.

The next condition for determining whether a bankruptcy court shall make a certification pursuant to § 158(d)(2)(A), is whether there are conflicting decisions. As the Court found in its Opinion, "[i]t is clear from the seven (7) cases which have addressed golden shares or blocking provisions, either provision will be upheld as valid if it is held by an equity holder. If either provision is held by a creditor, however, the provision will be void as a matter of public policy.[17],[18] Consequently, the Court finds that there are not conflicting decisions and that this condition is not present for requiring certification of a direct appeal.

The Court finds that the final condition for certification of a direct appeal is met. In *Price v. Gurney*, the Supreme Court held that a bankruptcy petition filed on behalf of a corporation may

---

[17]In *Global Ship* and *Squire Court*, the provisions were upheld because they were held by equity holders. In *Bay Club, Lake Michigan Beach, Intervention Energy,* and *Lexington Hospitality* the provisions were declared void because they were held by creditors.

[18]*Memorandum Opinion,* Case No. 1702316EE, Dkt. #253, p. 18, Dec. 18, 2017.

only be filed by those who have authority to act for the corporation under state law. If the corporate authority to file bankruptcy is lacking, the bankruptcy court does not acquire jurisdiction, and the case must be dismissed.[19] In its Opinion, the Court dismissed the Debtor's bankruptcy case because the Court found that the Debtor filed bankruptcy without the consent of Boketo, and therefore, lacked corporate authority to file bankruptcy.

The bankruptcy case was filed on June 26, 2017. From the day the petition was filed, the Debtor aggressively moved forward with its bankruptcy case. Up until the case was dismissed, the Debtor was moving forward with an auction of substantially all of the its assets.[20] If the Fifth Circuit finds that the Court incorrectly dismissed the Debtor's bankruptcy case, the Debtor's case would be reinstated and the Debtor could move forward with its auction. Consequently, an immediate appeal would certainly advance the progress of the Debtor's bankruptcy case.

The Court has found that three of the four conditions under § 158(d)(2)(A) are met. Therefore, the Court is compelled to certify this matter for direct appeal.

**IT IS THEREFORE ORDERED** that the *Debtor's Request for Certification Pursuant to 28 U.S.C. §158(d)(2)(A) of a Direct Appeal to the Court of Appeals for the Fifth Circuit of this Court's Order Granting Boketo's Motion to Dismiss Bankruptcy Case* (Dkt. #259) filed by Franchise Services of North America, Inc. is hereby granted.

**IT IS FURTHER ORDERED** that pursuant to 28 U.S.C. § 158(d)(2)(A) the following questions are hereby certified for direct appeal to the Court of Appeals for the Fifth Circuit:

---

[19]*Price v. Gurney*, 324 U.S. 100, 106, 65 S.Ct. 513, 89 L.Ed. 776 (1945).

[20]*See* Dkt. ## 106, 108, 147, and 185.

1.  Is a provision, typically called a blocking provision or a golden share, which gives a party (whether a creditor or an equity holder) the ability to prevent a corporation from filing bankruptcy valid and enforceable or is the provision contrary to federal public policy?

2.  If a party is both a creditor and an equity holder of the debtor and holds a blocking provision or a golden share, is the blocking provision or golden share valid and enforceable or is the provision contrary to federal public policy?

3.  Under Delaware law, may a certificate of incorporation contain a blocking provision/golden share?  If the answer to that question is yes, does Delaware law impose on the holder of the provision a fiduciary duty to exercise such provision in the best interests of the corporation?

## ATTACHMENTS FOLLOW:

**EXHIBIT A.**  *Notice of Appeal* (Dkt. #260).

**EXHIBIT B.**  *Debtor's Request for Certification Pursuant to 28 U.S.C. §158(d)(2)(A) of a Direct Appeal to the Court of Appeals for the Fifth Circuit of this Court's Order Granting Boketo's Motion to Dismiss Bankruptcy Case* (Dkt. #259).

## END OF ORDER ##

# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| In re: | ) |
| | ) |
| **FRANCHISE SERVICES OF NORTH** | ) |
| **AMERICA, INC.** | )      **CASE NO. 17-02316-EE** |
| | )      **Chapter 11** |
| **Debtor** | ) |
| | ) |

## NOTICE OF APPEAL
[Dkt. ## 253, 254]

**NOTICE IS HEREBY GIVEN** that Franchise Services of North America, Inc., the

Debtor and debtor-in-possession in this Chapter 11 case (the "***Debtor***" or the "***Appellant***"), a

party-in-interest herein, by and through its undersigned attorney, pursuant to

28 U.S.C. § 158(a)(1) and FED. R. BANKR. P. 8001(a), appeals to the United States District Court

for the Southern District of Mississippi from the Bankruptcy Court's *Memorandum Order*

[Dkt. # 253], dated December 18, 2017 and its *Final Judgment* [Dkt. # 254], dated December 18,

2017 (together, the "***Dismissal Order***")[1] and entered on the Court's electronic docket in this

bankruptcy case on December 18, 2017.

The names of all parties to the Order appealed from, and the names, addresses, and

telephone numbers of their respective attorneys, are as follows:

(1) Macquarie Capital (USA) Inc., Michael John Silverton, Daniel Raymond Boland, and

Boketo LLC, represented by:

(a) Brooks Eason (Miss. Bar No. 5286) and Alan L. Smith, Esq. (Miss. Bar No.

10345), Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, One Eastover Center,

100 Vision Drive, Suite 400, Jackson, Mississippi 39211, Tel.: (601)351-2400; and

---

[1] True and correct copies of the Dismissal Order are attached hereto as **Exhibit A.**

# EXHIBIT A

(b) Kevin H. Marino (admitted pro hac vice), John D. Tortorella (admitted pro hac vice), and John A. Boyle (application for pro hac vice admission to be filed) of Marino, Tortorella & Boyle, P.C., 437 Southern Boulevard, Chatham, New Jersey 07928-1488, Tel.: (973) 824-9300 [Appellees]; and

(2) Franchise Services of North America, Inc., represented by Christopher R. Maddux (Miss. Bar No. 100501), Stephen W. Rosenblatt (Miss. Bar No. 5676), J. Mitchell Carrington (Miss. Bar No. 104228), and Thomas M. Hewitt (Miss. Bar No. 104589) of Butler Snow LLP, 1020 Highland Colony Parkway, Suite 1400, Ridgeland, MS 39157, Tel.: (601) 948-5711 [Appellant].

Dated: December 22, 2017.

Respectfully submitted,

**FRANCHISE SERVICES OF NORTH AMERICA, INC.**

By: */s/ Christopher R. Maddux*
Christopher R. Maddux (Miss. Bar No. 100501)
Stephen W. Rosenblatt (Miss. Bar No. 5676)
J. Mitchell Carrington (Miss. Bar No. 104228)
Thomas M. Hewitt (Miss. Bar No. 104589)
BUTLER SNOW LLP
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
Telephone: (601) 948-5711
Chris.Maddux@butlersnow.com
Steve.Rosenblatt@butlersnow.com
Mitch.Carrington@butlersnow.com
Thomas.Hewitt@butlersnow.com

**ATTORNEYS FOR THE DEBTOR**

**EXHIBIT A**

## **CERTIFICATE OF SERVICE**

I certify that the foregoing pleading was filed electronically through the Court's ECF system and served electronically on all parties enlisted to receive service electronically  and that I also served a copy of this pleading by electronic mail as follows:

Kevin H. Marino, Esq.
John D. Tortorella, Esq.
John A. Boyle, Esq.
Marino, Tortorella & Boyle, P.C.
437 Southern Boulevard
Chatham, New Jersey  07928-1488
kmarino@khmarino.com
JTortorella@khmarino.com
jboyle@khmarino.com

Brooks Eason, Esq. (Miss. Bar No. 5286)
Alan L. Smith, Esq. (Miss. Bar No. 10345)
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
One Eastover Center
100 Vision Drive, Suite 400
Jackson, Mississippi 39211
beason@bakerdonelson.com
asmith@bakerdonelson.com

Dated:  December 22, 2017.

*/s/ Christopher R. Maddux*
CHRISTOPHER R. MADDUX

**EXHIBIT A**

**Exhibit A**

39279750v2

**EXHIBIT A**

---

SO ORDERED,

*Edward Ellington*

Judge Edward Ellington
United States Bankruptcy Judge
Date Signed: December 18, 2017

The Order of the Court is set forth below. The docket reflects the date entered.

---

## IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: | **CHAPTER 11** |
| **FRANCHISE SERVICES OF NORTH AMERICA, INC.** | **CASE NO. 1702316EE** |

Hon. Stephen W. Rosenblatt                                                      Attorneys for Debtor
steve.rosenblatt@butlersnow.com
Hon. Christopher R. Maddux
chris.maddux@butlersnow.com
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS  39157


Hon. Alan Lee Smith                                        Attorneys for Macquarie Capital (USA), Inc., et. al
asmith@bakerdonelson.com
Hon. Paul Brooks Eason
beason@bakerdonelson.com
One Eastover Center
100 Vision Drive, Suite 400
Jackson, MS  39211

Hon. Kevin H. Marino
kmarino@khmarino.com
Hon. John D. Tortorella
jtortorella@khmarino.com
Hon. John A. Boyle
jboyle@khmarino.com
437 Southern Boulevard
Chatham, NJ  07928-1488

**EXHIBIT A**

Edward Ellington, Judge

## <u>MEMORANDUM OPINION</u>

**THIS MATTER** came before the Court on the *Motion of the Macquarie Parties to Dismiss the Chapter 11 Case for Petition Having Been Filed Without Proper Corporate Authority* (Dkt. #121) filed by Macquarie Capital (USA) Inc., Michael John Silverton, and Daniel Raymond Boland; *Joinder of Boketo LLC to the Motion of the Macquarie Parties to Dismiss the Chapter 11 Case for Petition Having Been Filed Without Proper Corporate Authority* (Dkt. #168); *Response and Objection of Franchise Services of North America Inc. to the Motion of the Macquarie Parties to Dismiss the Chapter 11 Case and the Joinder of Boketo LLC [Dkt. # 121; 168]* (Dkt. #186); *The Macquarie Parties' Reply to the Debtor's Response and Objection to their Motion to Dismiss the Chapter 11 Case and the Joinder of Boketo LLC* (Dkt. #206) filed by Macquarie Capital (USA) Inc. Michael John Silverton and Daniel Raymond Boland; and *Debtor's Response to the Macquarie Parties' Reply to the Debtor's Response and Objection to their Motion to Dismiss the Chapter 11 Case and the Joinder of Boketo LLC [Dkt. ## 121; 168; 186; 206]* (Dkt. #221). Having considered same, the evidence presented at trial, and the respective briefs filed by the parties, the Court finds that the *Motion of the Macquarie Parties to Dismiss the Chapter 11 Case for Petition Having Been Filed Without Proper Corporate Authority* (Dkt. #121) filed by Macquarie Capital (USA) Inc., Michael John Silverton, and Daniel Raymond Boland is not well-taken and is not granted. The Court finds, however, that the case should be dismissed on the *Joinder of Boketo LLC to the Motion of the Macquarie Parties to Dismiss the Chapter 11 Case for Petition Having Been Filed Without Proper Corporate Authority* (Dkt. #168).

**EXHIBIT A**

2

17-02316-ee   Dkt 253   Filed 12/18/17   Entered 12/18/17 15:09:10   Page 3 of 26

### FINDINGS OF FACT[1]

Franchise Services of North America (FSNA) is related to a previous Chapter 11 bankruptcy case filed in this Court, *Simply Wheelz d/b/a Advantage Rent-A-Car* (Simply Wheelz), Case No. 1303332EE, filed on November 5, 2013. The history between FSNA, Simply Wheelz, Macquarie Capital (USA) Inc., Michael John Silverton, Daniel Raymond Boland, and Boketo LLC, to name a few, is complicated, but it began with the transaction to purchase Advantage Rent-A-Car from The Hertz Corporation (Hertz).

FSNA was created and incorporated in 1998 in Canada. FSNA is in the business of renting automobiles, mainly through the grant of franchises. FSNA owns U-Save Holdings. U-Save Holdings owns 100% of the stock of U-Save Auto Rental. U-Save Auto Rental owns 100% of the stock of Auto Rental Resource Center, Inc., U-Save Car Sales, Inc., Practical Rent-A-Car System, Inc., Hollywood Call Center, Inc., U-Save Leasing, Inc., and Peakstone Financial Services, Inc. The following brands are owned by FSNA and it subsidiaries: U-Save Car & Truck Rental, U-Save Car Sales, Auto Rental Resource Center, Xpress Rent A Car, Sonoran National Insurance Group, and Peakstone Financial Services. "These franchisees, along with independent car rental associates under the ARRC model, operate more than 650 locations throughout the United States, which makes U-Save one of North America's largest franchise car rental companies. U-Save currently services

---

[1]These findings of fact and conclusions of law constitute the Court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

**EXHIBIT A**

25 airport markets in 10 different states and 15 countries."[2]

The *Agreement and Plan of Merger by and among Adreca Holdings Corporation, Boketo LLC, Franchise Services of North America, Inc. and Advantage Company Holdings, Inc.* (Trial Exh. 9A) (Merger Plan) was entered into on July 13, 2012.  This is when the process began for Adreca Holdings Corporation (Adreca) to acquire Simply Wheelz, LLC from Hertz and to eventually merge into FSNA.  Adreca is an affiliate of Macquarie Capital (USA) Inc. (Macquarie).  This acquisition (Advantage Acquisition) was for the purpose of acquiring Advantage Rent-A-Car (Advantage) from Hertz.[3]

Pursuant to the Merger Plan, Adreca acquired 100% of Simply Wheelz from Hertz in December of 2012.  (Trial Exh. 9A).

Boketo LLC (Boketo) was incorporated in 2012 in Delaware in order to implement an investment in FSNA.  "Boketo invested $15 million in FSNA in order to allow FSNA to acquire a business called Advantage from Hertz."  (Trial Tr. at 18).  Boketo is 100% indirectly owned by Macquarie.  (*Id.* at 16).  In exchange for this investment, Boketo was given a 49.76% interest in FSNA in the form of Series A Preferred Stock.  Boketo became the largest single shareholder of FSNA.  (*Id.* at 18).

With the closing of the Advantage Acquisition in May of 2013, Adreca merged into FSNA.  FSNA operated the Advantage business via its subsidiary Simply Wheelz.  FSNA was then re-

---

[2]*Declaration of Thomas P. McDonnell, III, in Support of the Debtor's Chapter 11 Petition and First Day Pleadings and Applications*, Case No. 1702316EE, Dkt. #7, p. 9, June 27, 2017.

[3]Hertz was merging with Dollar Thrifty Automotive Group, Inc.  Hertz was required to divest itself of certain assets due to antitrust concerns.  One of the assets Hertz divested itself of was Advantage.  Trial Tr. at 18.

**EXHIBIT A**

4

domiciled as a Delaware corporation and a *Certificate of Incorporation of Franchise Services of North America Inc.* (Certificate of Incorporation) was filed with the Secretary of State of the State of Delaware on May 2, 2013. (Trial Exh. 36).

As a result of the Advantage/Simply Wheelz transaction, FSNA agreed to pay Macquarie a *Financial Advisory Fee* of $500,000.00, and an *Arrangement Fee* of $2,500,000.00. On March 28, 2013, Macquarie issued an *Invoice* to FSNA for the *Arrangement Fee* of $2,500,000.00.[4] Neither of the fees has been paid by FSNA and are the subject of litigation between FSNA and Macquarie in the State of New York and related litigation in the United States District Court in the Southern District of Mississippi.

While not relevant to the resolution of the litigation pending before the Court, as noted above, Simply Wheelz filed a Chapter 11 in this Court on November 5, 2013 (Case No. 1303332EE). In its Chapter 11 case, Simply Wheelz sold substantially all of its assets to Advantage Opco, LLC. Subsequent to the sale of its assets and a conclusion of pending litigation, an order approving the dismissal of the case was entered on January 28, 2016.

On June 26, 2017, FSNA (hereafter, Debtor) filed a petition for relief under Chapter 11 of the Bankruptcy Code. According to the testimony of Jonathan Nash, the Debtor's turnaround and restructuring agent, the board of the Debtor met in late June and adopted a resolution to file bankruptcy.[5] An undated[6] *Certified Resolution* memorializing the decision of the Debtor's board

---

[4]*Exhibit D, Proof of Claim*, Case No. 1702316EE, Claim 7-1, Oct. 24, 2017, filed by Macquarie Capital (USA) Inc.

[5]Trial Tr. at 92-98.

[6]The last page of the *Certified Resolution* is a *Certificate* signed by the Debtor's secretary. The *Certificate* is dated August 15, 2017, however, the date the FSNA Board of Directors adopted the resolution to file bankruptcy is not disclosed in the *Certified Resolution.*

**EXHIBIT A**

to file bankruptcy was admitted as Trial Exhibit #1.

The Debtor filed various first day motions on June 27, 2017.  On June 28, 2017, Macquarie's attorneys filed a *Notice of Appearance and Request for Notices* (Dkt. #28).  The attorneys for Macquarie appeared at the June 28, 2017, hearing on the first day motions.  Interim orders were entered on most of the first day motions and a final hearing was set for July 17, 2017.

At a July 11, 2017, status conference, the attorney for Macquarie raised the question of whether the Debtor had shareholder consent to file bankruptcy, and stated if it did not, Macquarie might file a motion to dismiss the case.  Subsequently on August 10, 2017, Macquarie Capital (USA) Inc., Michael John Silverton, and Daniel Raymond Boland[7] filed a *Motion of the Macquarie Parties to Dismiss the Chapter 11 Case for Petition Having Been filed Without Proper Corporate Authority* (Dkt. #121) (Motion).  In its Motion, the Macquarie Parties state that in violation of its Certificate of Incorporation, the Debtor failed to get the consent of Boketa before it filed its bankruptcy petition.  Consequently, the Macquarie Parties state that the case should be dismissed because the case was filed without the proper corporate authority, and therefore, the Court lacked jurisdiction to hear the case.

A two page *Joinder of Boketo LLC to the Motion of the Macquarie Parties to Dismiss the Chapter 11 Case for Petition Having Been Filed Without Proper Corporate Authority* (Dkt. #168) (Joinder) was filed on August 31, 2017.  In the Joinder, Boketo fully adopted the Motion filed by the Macquarie Parties.

---

[7]As noted, the Motion was filed by Macquarie, Michael John Silverton, and Daniel Raymond Boland.  Silverton, Boland and Bruce Donaldson were the initial managers of Boketo.  All three are either current employees of Macquarie or are former employees of Macquarie.  (Trial Tr. at 43-44.)  When referring to the specific parties who filed the Motion, the Court will refer to them as Macquarie Parties.  Any use of Macquarie refers to Macquarie Capital (USA) Inc.

**EXHIBIT A**

On September 18, 2017, the Debtor filed *Response and Objection of Franchise Services of North America Inc. to the Motion of the Macquarie Parties to Dismiss the Chapter 11 Case and the Joinder of Boketo LLC* (Response) (Dkt. #186).  In its Response, the Debtor's main assertion is that any provision restricting the right to file a bankruptcy petition is void as a matter of public policy.

The Motion, Joinder, and Response were set for trial on October 5, 2017.  At the trial, Mr. Tobias Bachteler testified on behalf of Boketo.  In addition to being a managing director of Macquarie, Mr. Bachteler is one of the current managers of Boketo.  The other two managers are Duncan Murdoch and Jin Chun.[8]  Mr. Bachteler testified that Boketo never approved or consented to the Debtor filing bankruptcy.[9]  The Debtor did not present any testimony or evidence to refute Mr. Bachteler's testimony.

At the conclusion of the trial, the parties agreed upon a briefing schedule.  When the final briefs were filed, the Court took the matter under advisement.

## CONCLUSIONS OF LAW

### I.  Jurisdiction

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(1).

### II.  Waiver, Estoppel, and/or Laches

The Debtor filed its petition on June 26, 2017.  Forty-five days later, on August 10, 2017, the Macquarie Parties filed their Motion.  Sixty-six days after the petition was filed, Boketo filed

---

[8]Trial Tr. at 15-18.

[9]*Id.* at 30-31.

**EXHIBIT A**

7

its Joinder in the Motion on August 31, 2017.  The Debtor argues that by failing to file the Motion

and Joinder when the case was initially filed, the Motion and Joinder should be denied because of

the principals of waiver, estoppel, and/or laches.   For the reasons adeptly explained by the

Honorable Jason D. Woodard, in *In re Mid-South Business Associates, LLC* the Court disagrees.

> It is well-settled that objections to subject matter jurisdiction may be made at any
> time, and may even be raised and decided by the Court on its own motion if the
> parties overlook or elect not to press such an objection. *Henderson v. Shinseki*, 562
> U.S. 428, 434–35, 131 S.Ct. 1197, 179 L.Ed.2d 159 (2011).  If the Court finds that
> Dr. Windham did not have sufficient corporate authority to file the Debtor's petition,
> then the Court lacks subject matter jurisdiction over this bankruptcy case and has no
> alternative but to dismiss it. *See id.*

> The Debtor's claim that, by failing to file the Motion earlier in the case, Thompson
> waived his right to challenge the corporate authority under which the petition was
> filed is not well-taken.  The Court acknowledges that the United States Court of
> Appeals for the Fifth Circuit has previously held that such a waiver could be a
> defense against a motion to dismiss for lack of corporate authority.  *See Peterson v.
> Atlas Supply Corp. (In re Atlas Supply Corp.)*, 857 F.2d 1061, 1064 (5th Cir.
> 1988)(delay in seeking dismissal of 14 months from petition date)(citing *Alexander
> v. Farmers' Supply Co. (In re Farmers' Supply Co.)*, 275 F. 824 (5th Cir. 1921)(delay
> in seeking dismissal of only 4 months)).  In a later case, however, the Fifth Circuit
> acknowledged that a bankruptcy court lacks subject matter jurisdiction over a
> bankruptcy petition filed without the required corporate authority.  *Treen v. Orrill,
> Cordell, & Beary, LLC (In re Delta Starr Broad., LLC)*, 422 Fed. Appx. 362, 368
> (5th Cir. 2011)("Any suit lacking subject matter jurisdiction must be dismissed
> regardless of how long a case has been pending.")(citing *Temple Drilling Co. v. La.
> Ins. Guar. Ass'n.*, 946 F.2d 390 (5th Cir. 1991)).

> Although *Delta Starr* is an unpublished Fifth Circuit case, and therefore of limited
> precedential value, its holding was premised on the United States Supreme Court
> case, *Price v. Gurney*, 324 U.S. 100, 106, 65 S.Ct. 513, 89 L.Ed. 776 (1945), which
> is, of course, binding authority.  In *Price*, the Supreme Court held that if the trial
> court "finds that those who purport to act on behalf of the corporation have not been
> granted authority by local law to institute the proceedings, it has no alternative but to
> dismiss the petition." *Id.* at 106, 65 S.Ct. 513.  *See also Hager v. Gibson*, 108 F.3d
> 35, 39 (4th Cir. 1997); *Keenihan v. Heritage Press, Inc.*, 19 F.3d 1255, 1259 (8th
> Cir. 1994).  Accordingly, if Dr. Windham lacked authority under Mississippi law to
> file the petition on behalf of the Debtor, then this case must be dismissed.

*In re Mid-S. Bus. Assocs., LLC*, 555 B.R. 565, 570 (Bankr. N.D. Miss. 2016).          **EXHIBIT A**

17-02316-ee   Dkt 253   Filed 12/18/17   Entered 12/18/17 15:09:10   Page 9 of 26

Consequently, the Motion and Joinder are not barred by waiver, estoppel and/or laches.  If the Court finds that the Debtor filed its bankruptcy petition without the sufficient corporate authority, the Court does not have jurisdiction over the case, and the case must be dismissed.

### III.  Corporate Authority to File Bankruptcy

#### A.  Specific Provisions of Debtor's *Certificate of Incorporation*

For the purposes of this Opinion, the relevant provision of the Certificate of Incorporation is § 4(j).  Section 4(j) provides:

> [T]he Corporation shall not and, in the case of clause (2) below, shall not permit any subsidiary to, directly or indirectly (whether through merger, consolidation, amendment to this Certificate of Incorporation or otherwise), do any of the following without first obtaining the written consent or affirmative vote of (i) the holders of a majority of the shares of Series A Preferred Stock then outstanding, voting separately as a class (a "Preferred Majority"), and (ii) the holders of a majority of the shares of Common Stock then outstanding, voting separately as a class:
>
> . . . .
>
> (3) effect any Liquidation Event;[10]

Section 9.1 of the Certificate of Incorporation states that a *Liquidation Event*:  "means any voluntary or involuntary liquidation, dissolution or winding up of the affairs of the Corporation or the Corporation taking any preparatory steps towards or filing a petition for bankruptcy, insolvency, receivership or similar relief."[11]

Boketo is the holder of the Debtor's Preferred Stock, and if § 4(j) is valid and enforceable,

---

[10]Trial Exh. 36, *Certificate of Incorporation of Franchise Services of North America Inc.*, p. 18-19.

[11]*Id.* at 29.

**EXHIBIT A**

Boketo would have to approve the filing of a bankruptcy petition by the Debtor.

## B. Legal Authorities

In *Price v. Gurney*, the United States Supreme Court held that a bankruptcy petition filed on behalf of a corporation may only be filed by those who have authority to act for the corporation under state law.  If the corporate authority to file bankruptcy is lacking, the bankruptcy court does not acquire jurisdiction and the case must be dismissed.[12]  Since the Debtor was incorporated in the State of Delaware, the Court must look to Delaware law to determine if § 4(j) is valid.

Provisions similar to § 4(j) are sometimes referred to as the grant of golden shares or blocking provisions.  The inclusion of blocking provisions in articles of incorporation and LLC operating agreements is relatively new.  As one court explained, the reason for these provisions is because

> a simpler, absolute prohibition against filing for bankruptcy will likely be deemed void as against public policy.  As corporate entities have been held to have, in certain instances, rights akin to that of natural person, see, e.g., *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 342, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010), prohibiting such entities from availing themselves of the bankruptcy laws—laws so seminally important that they were specifically authorized under the Constitution—is generally considered bad form. *Gen. Growth*, 409 B.R. at 49. In the same way that individuals may not contract away their bankruptcy rights, corporations should be similarly constrained.  *See, e.g.*, 11 U.S.C. 362(e); *Klingman v. Levinson*, 831 F.2d 1292, 1296 (7th Cir. 1987) ("For public policy reasons, a debtor may not contract away the right to a discharge in bankruptcy."); *In re Shady Grove Tech Ctr. Assocs. Ltd. P'ship*, 216 B.R. 386, 390 (Bankr. D.Md. 1998), supplemented, 227 B.R. 422 (Bankr. D.Md. 1998) (corporate contractual "prohibitions against the filing of a bankruptcy case are unenforceable").

> Bankruptcy law, however, is equally clear that corporate formalities and state corporate law must also be satisfied in commencing a bankruptcy case. *NNN 123 N. Wacker*, 510 B.R. at 858.  Except in very specific circumstances not at play here, an improperly authorized corporate bankruptcy filing is infirm. *Id.* (citing *Price v.*

---

[12]*Price v. Gurney*, 324 U.S. 100, 106, 65 S.Ct. 513, 89 L.Ed. 776 (1945).

10

**EXHIBIT A**

*Gurney*, 324 U.S. 100, 106, 65 S.Ct. 513, 89 L.Ed. 776 (1945)).

Put another way, the long-standing policy against contracting away bankruptcy benefits is not necessarily controlling when what defeats the rights in question is a corporate control document instead of a contract. *See Klingman*, 831 F.2d at 1296; *see also 203 N. LaSalle St. P'ship*, 246 B.R. at 331 (As "bankruptcy is designed to produce a system of reorganization and distribution different from what would obtain under nonbankruptcy law, it would defeat the purpose of the Code to allow parties to provide by contract that the provisions of the Code should not apply.").[13]

The parties and the Court found seven (7) cases addressing golden shares or blocking provisions. In six (6) cases, the debtors are limited liability companies, and in one (1) case, the debtor is a partnership. The Court notes that all of the cases begin with the premise that the waiving or contracting away the right to file for relief under the bankruptcy code is contrary to federal public policy.

In re Global Ship Systems, LLC.

The first case to address the validity of golden shares or blocking provisions was *In re Global Ship Systems, LLC*. In *Global Ship*, the debtor owned a shipyard. The debtor was engaged in litigation with Drawbridge, an equity owner of the debtor and a creditor of the debtor. The debtor's operating agreement granted Drawbridge a blocking provision. An involuntary petition was filed against the debtor, however, the court eventually found that due to the debtor's acts in orchestrating the filing, the involuntary was in reality a voluntary Chapter 11. Drawbridge filed a motion to dismiss based upon its lack of consent to the filing of the bankruptcy case. The court based its ruling on 11 U.S.C. § 1112(b)(1).[14]

---

[13]*In re Lake Mich. Beach Pottawattamie Resort, LLC*, 547 B.R. 899, 911-12 (Bankr. N.D. Ill. 2016).

[14]Hereafter, all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

**EXHIBIT A**

11

The court first determined that Drawbridge held both an equity and debt interests in the debtor. The court then found that "[a]n absolute waiver of the right to file bankruptcy is violative of public policy if asserted by a lender. However, since Drawbridge wears two hats in this case, as a Class B shareholder, it has the unquestioned right to prevent, by withholding consent, a voluntary bankruptcy case."[15] Consequently, the court dismissed the case.

_In re Bay Club Partners-472, LLC._

The next case was _In re Bay Club Partners-472, LLC._ In _Bay Club_, the creditor financed the purchase of an apartment complex. The debtor agreed to add a bankruptcy waiver provision in favor of the creditor to the debtor's operating agreement. The debtor filed bankruptcy without the creditor's approval. The creditor filed a motion to dismiss for cause pursuant to § 1112(b). In denying the motion, the court found that "[t]he bankruptcy waiver in . . . the Operating Agreement is no less the maneuver of an 'astute creditor' to preclude [the debtor] from availing itself of the protections of the Bankruptcy Code prepetition, and it is unenforceable as such, as a matter of public policy."[16]

_In re Lake Michigan Beach Pottawattamie Resort, LLC._

_In re Lake Michigan Beach Pottawattamie Resort, LLC_ was the third opinion to address the issue of a golden share or blocking provision. In _Lake Michigan Beach_, the creditor financed the purchase of a resort. After the debtor defaulted on the loan, the debtor's operating agreement was modified to make the creditor a special member with the power to block the filing of any bankruptcy

---

[15]_In re Global Ship Systems, LLC_, 391 B.R. 193, 203 (Bankr. S.D. Ga. 2007)(citations omitted).

[16]_In re Bay Club Partners-472, LLC_, Case No. 14-30394, 2014 WL 1796688, at *5 (Bankr. D. Or. May 6, 2014)

**EXHIBIT A**

petition.  The debtor filed bankruptcy.  The creditor moved to dismiss for bad faith under § 1112(b) and because the creditor argued that the bankruptcy was filed without corporate authority.

The court found that the special member was kept totally separate from the debtor:  it had no interest in profits or losses; it was not required to make capital contributions; it had no rights to distributions; and had no duty or obligation to the debtor in any manner.[17]  Further, as a member of a Michigan limited liability company, the court found that the special agent had to consider the interests of the debtor.  The court found that the blocking provision was void because it allowed the special agent to consider only its interests.  Giving that power to a creditor would undermine not only Michigan corporate governance but also the bankruptcy code,[18] and therefore, the Court denied the motion to dismiss.

_In re Intervention Energy Holdings, LLC._

On June 3, 2016, a bankruptcy court in Delaware entered its opinion in _In re Intervention Energy Holdings, LLC._  Intervention Energy Holdings, LLC. was a corporation organized under the laws of Delaware.  In _Intervention Energy_, the debtor was an oil and gas exploration and production company mainly doing business in North Dakota.  The creditor entered into an agreement to loan the debtor up to $200 million.  The debtor defaulted on the loan and in exchange for the creditor waiving all defaults, the debtor agreed to give the creditor one share in order to make the creditor a common member of the LLC.  The debtor also amended its operating agreement to require unanimous consent of all members in order to file bankruptcy.

After the debtor filed bankruptcy, the creditor filed a motion to dismiss arguing that the

---

[17]_In re Lake Michigan Beach_, 547 B.R. at 904.

[18]_Id._ at 914.

**EXHIBIT A**

17-02316-ee   Dkt 272   Filed 02/27/18   Entered 02/27/18 16:03:29   Page 32 of 55

17-02316-ee   Dkt 253   Filed 12/18/17   Entered 12/18/17 15:09:10   Page 14 of 26

debtor lacked authority to file bankruptcy because it had not consented to the filing.  The debtor

cited *Lake Michigan Beach* to argue that the blocking member or holder of the golden share could

not abrogate its fiduciary duties and "must retain a duty to vote in the best interest of the potential

debtor to comport with federal bankruptcy policy."[19]

The court, however, decided the case on federal public policy grounds and declined to

address the debtor's fiduciary duty argument.[20]  The court found the blocking provision to be void

because

> the sole purpose and effect of which is to place into the hands of a single, minority
> equity holder the ultimate authority to eviscerate the right of that entity to seek
> federal bankruptcy relief, and the nature and substance of whose primary relationship
> with the debtor is that of creditor–not equity holder–and which owes no duty to
> anyone but itself in connection with an LLC's decision to seek federal bankruptcy
> relief, is tantamount to an absolute waiver of that right, and, even if arguably
> permitted by state law, is void as contrary to federal public policy.[21]

The court distinguished the creditor in *Intervention Energy* from the creditor in *Global Ship

Systems, LLC.*[22]  The *Global Ship* court found that the creditor wore two hats:  it was initially a 20%

equity holder in addition to being a creditor of *Global Ship*.  The *Intervention Energy* court found

that there was no comparison to the *Global Ship* creditor who had a 20% equity interest and the

---

[19]*In re Intervention Energy Holdings, LLC.*, 553 B.R. 258, 262 (Bankr. D.Del. 2016) (footnote
omitted).

[20]The court stated:  "In light of my disposition of the federal public policy issue which follows,
and reluctant to accept the parties' invitation to decide what may well be a question of first
impression of state law (i.e., determining the scope of LLC members' freedom to contract under
applicable state law provisions) when an alternate ground for decision is present, I find it
unnecessary to address these arguments."  *Id.* at 262-63.

[21]*Id.* at 265. (footnote omitted).

[22]*Supra* note 15, at 12.

**EXHIBIT A**

*Intervention Energy* creditor who had one (1) share of the debtor.[23]

*In re Tara Retail Group, LLC*.

The next court to address the validity of a golden share or blocking member was *In re Tara Retail Group, LLC*.  *Tara Retail*, however, had a different wrinkle than the prior four (4) cases.  In *Tara Retail*, the debtor, a Georgia LLC, managed a shopping center.  The creditor was secured by a lien on the shopping center.  The debtor's operating agreement states that as long as a mortgage exists on the shopping center, the debtor "shall have as its manager a single purpose entity that owns at least zero percent of the membership interests of the limited liability company ('SPC Party'). . . there shall be in place at all times an Independent Director who serves as either a manager of the Debtor or a director of the SPC party;"[24] and that in order to file bankruptcy, the debtor had to have the unanimous consent of its board or managers including the independent director.

On the eve of filing bankruptcy, the debtor attempted to obtain the approval from the independent director[25] to file bankruptcy.  The Debtor filed bankruptcy without obtaining the approval of the independent director.  Despite repeated efforts, the independent director failed to respond to the debtor or the court regarding the issue of the debtor's bankruptcy filing.

Ultimately, the court rejected the debtor's argument that the blocking provision violated public policy.  The court did find, however, that the independent director "had full knowledge of all

---

[23]*In re Intervention Energy*, 553 B.R. at 265 n 25.

[24]*In re Tara Retail Group, LLC,* Case No. 17-bk-57, 2017 WL 1788428, at *2  (Bankr. N.D. WV May 4, 2017) appeal dism'd 2017 WL 2837015 (N.D. WV June 30, 2017).

[25]At this point, the independent director was a company who provided independent trustees or directors for single-asset entities.  The company was run by an attorney.

**EXHIBIT A**

facts pertinent to exercising a veto to the bankruptcy filing,"[26] and the independent director's continued silence ratified the debtor's bankruptcy filing, therefore, the court denied the motion to dismiss.

_In re Squire Court Partners Limited Partnership._

On July 7, 2017, _In re Squire Court Partners Limited Partnership_ was issued.  The partnership in _Squire Court_, established under Arkansas law, was created to acquire and operate an apartment complex.  Centerline contributed $1.3 million in exchange for a 99.98% interest in the debtor.  Another entity became a limited partner and was given a .01% interest in the debtor.  The general partner was NHDC Texas and was given a .01% interest in the debtor.  NHDC Texas had exclusive authority to control the debtor's assets and affairs, but the partnership agreement required unanimous consent of all partners before any bankruptcy filing.

After a default on the promissory note on the apartment complex (owed to Wells Fargo Bank, N.A.), NHDC Texas filed a bankruptcy petition on behalf of Squire Court.  NHDC Texas sought the consent of the other partners, but they declined to consent.  Centerline filed a motion to dismiss the bankruptcy case arguing that the debtor lacked corporate authority to file the petition.

The court distinguished _Lake Michigan Beach_ (blocking provision invalid because given to a creditor), _Intervention Energy_ (golden share invalid because given to a creditor), and _Bay Club Partners_ (blocking provision invalid because given to a creditor) from the facts before it in _Squire Court._  The court found that in those three cases, the blocking provisions violated federal public policy because as a condition for supplying credit to a debtor, the creditor was attempting to limit the debtor's rights to file bankruptcy.  In distinguishing _Squire Court,_ the court held that "[t]he

---

[26]_Id._ at *4.

16

**EXHIBIT A**

limited partners [of Squire Court], however, are owners, not creditors of Squire Court."[27]

*In re Lexington Hospitality Group, LLC.*

The most recent case to address the golden share/blocking provision is *In re Lexington Hospitality Group, LLC* which was entered on September 15, 2017. In *Lexington Hospitality*, the debtor was created as a Kentucky Limited Liability Company and owned and operated a hotel. PCG Credit Partners (PCG) provided the financing to purchase the hotel. Contemporaneously with the execution of the loan documents, an amended operating agreement was executed admitting 5532 Athens, an entity wholly owned by PCG, as a member of the debtor LLC with a 30% membership interest (a later amendment to the operating agreement granted 5532 Athens a 50% membership interest). The amended operating agreement also included several provisions which limited the debtor's ability to file bankruptcy and required a 75% vote of the members. The debtor defaulted on the loan and filed a bankruptcy petition. PCG filed a motion to dismiss arguing that the debtor did not have the corporate authority to file the bankruptcy petition.

The court acknowledged that the authority to file bankruptcy is governed by Kentucky law, but that the validity of the restriction on filing bankruptcy is controlled by federal law. In reaching its decision, the court cited *Intervention Energy,*[28] *Lake Michigan Beach,*[29] and *Bay Club Partners*[30] with approval. The court likewise held that the prepetition granting of an absolute block to a creditor

---

[27]*In re Squire Court Partners Ltd P'ship,* 574 B.R. 701, 707 (Bankr. E.D. Ark. 2017).

[28]*Supra* note 18, at 12.

[29]*Supra* note 12, at 9.

[30]*Supra* note 15 at 11.

**EXHIBIT A**

"violate[d] federal public policy and [is] void."[31]

Looking to the facts before it, the court held that while the amended operating agreement required that an independent manager "help decide the need for a bankruptcy filing,"[32] in reality, the independent manager was "not a truly independent decision maker."[33] The court found that PCG's complete control over 5532 Athens gave it total control to block any bankruptcy filing. "Unlike a member or manager, PCG has no restrictions and no fiduciary duties to [the debtor] that might limit self-interested decisions that ignore the best interests of the [debtor]."[34] Consequently, the court denied the motion to dismiss the case.

### C. Application to Case at Bar

It is clear from the seven (7) cases which have addressed golden shares or blocking provisions, either provision will be upheld as valid if it is held by an equity holder. If either provision is held by a creditor, however, the provision will be void as a matter of public policy.[35]

### 1. The Macquarie Parties

As stated above, on March 28, 2013, Macquarie issued an *Invoice* to FSNA for the *Arrangement Fee* of $2,500,000.00.[36] Further, as is evident by the proofs of claims filed by the

---

[31]*In re Lexington Hospitality Group, LLC*, Case No. 17-51568, 2017 WL 4118117, at *6 (Bankr. E.D. Ky. Sept. 15, 2017).

[32]*Id.*

[33]*Id.*

[34]*Id.* at *7 (citation omitted).

[35]In *Global Ship* and *Squire Court*, the provisions were upheld because they were held by equity holders. In *Bay Club, Lake Michigan Beach, Intervention Energy,* and *Lexington Hospitality* the provisions were declared void because they were held by creditors.

[36]*Exhibit D, Proof of Claim*, Case No. 1702316EE, Claim 7-1, Oct. 24, 2017, filed by Macquarie Capital (USA) Inc.

**EXHIBIT A**

Macquarie Parties,[37] when the petition was filed on June 26, 2017, the Macquarie Parties were
creditors of the Debtor.  Therefore, to the extent that the Macquarie Parties claim to hold a golden
share or blocking provision, it is void as a matter of public policy.  Consequently, the Motion filed
by the Macquarie Parties should be denied.

## 2.  Boketo

As for Boketo's Joinder in the Motion, no evidence was presented to prove that Boketo was
a creditor of the Debtor. To the contrary, the only evidence introduced at trial showed that Boketo
invested $15,000,000.00 in the Debtor in order to finance the Advantage Acquisition.  In exchange
for this capital infusion, Boketo was given a 49.76% interest in the Debtor and § 4(j) was included
in the Certificate of Incorporation.  Since the only hat[38] Boketo wears is that of a substantial equity
holder, the rights give to Boketo in § 4(j) are valid and enforceable and are not contrary to public
policy under federal law.

### a.  Are Boketo and Macquarie One Entity

The Debtor asserts that Macquarie and Boketo are in reality the same entity.  Indeed at trial,
in response to a question from the Court that "at the end of the day . . . when [Macquarie] says 'Do
something,' Boketo is going to do it,"[39] the attorney for Macquarie, Kevin H. Marino, stated "I
couldn't agree with that more completely, Your Honor."[40]

Assuming that the control Macquarie has over Boketo is such that there is no practical

---

[37]Claim 7-1 and Claim 8-1 were filed by Macquarie Capital (USA) Inc.  Claim 9-1 was filed by
Daniel R. Boland.  Claim 10-1 was filed by Michael J. Silverton.

[38]*Global Ship*, 391 B.R. at 203.

[39]Trial Tr. at 126.

[40]*Id.* at 126-27.

**EXHIBIT A**

difference between the two entities, the result would not change.  Like the creditor Drawbridge in the *Global Ship*[41] case, Macquarie would be wearing "two hats."  Macquarie's one hat is as the creditor owed  $3,000,000.00, and the other hat as the equity holder Boketo with a $15,000,000.00 stake in the Debtor.  "[S]ince [Macquarie] wears two hats in this case . . . it has the unquestioned right to prevent, by withholding consent, a voluntary bankruptcy case."[42]

### b.  Fiduciary Duty

The Debtor argues that under Delaware law the affairs of a corporation must be managed by a board of directors who are subject to fiduciary duties.  In this case, the FSNA Board of Directors (FSNA Board) decided that it was in the best interest of the Debtor and all shareholders for it to file bankruptcy.  Therefore, the Debtor asserts that the blocking provision in § 4(j) is invalid under Delaware law because it gives that authority to Boketo instead of the FSNA Board.

The Debtor cites *McMullin v. Beran* to support its position that only the FSNA Board has the authority to decide whether to file bankruptcy.  *McMullin* is factually distinguishable from the case at bar– *McMullin* involved a dispute among shareholders over the merger of a chemical plant. What is applicable to the case at bar, however, is that in *McMullin*, the Supreme Court of Delaware discussed Del. Code Ann. tit. 8, § 141(a)[43] and the business judgment rule.

Section 141(a) provides: "The business and affairs of every corporation organized under this chapter shall be managed by or under the direction of a board of directors, except as may be otherwise provided in this chapter or in its certificate of incorporation." Del. Code Ann. tit. 8, §

---

[41]*Supra* note 15, at 12.

[42]*Global Ship*, 391 B.R. at 203. (citations omitted).

[43]Hereafter, all citations refer to title 8 of the Delaware Code unless specifically stated otherwise.

**EXHIBIT A**

141(a).

In addressing § 141(a) and the business judgment rule, the *McMullin* court stated:

One of the fundamental principles of the Delaware General Corporation Law statute is that the business affairs of a corporation are managed by or under the direction of its board of directors. The business judgment rule is a corollary common law precept to this statutory provision. The business judgment rule, therefore, combines a judicial acknowledgment of the managerial prerogatives that are vested in the directors of a Delaware corporation by statute with a judicial recognition that the directors are acting as fiduciaries in discharging their statutory responsibilities to the corporation and its shareholders. The business judgment rule "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."[44]

As permitted by § 141(a), the FSNA Board agreed to add § 4(j) to its Certificate of Incorporation. Consequently, the Court will presume that when the FSNA Board agreed to add § 4(j) to its Certificate of Incorporation, the FSNA Board "'acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'"[45] The Debtor did not offer any proof to rebut this presumption, therefore, the Court finds that when the FSNA Board made the decision to include § 4(j) in the Debtor's Certificate of Incorporation, the FSNA Board was acting in good faith and in the best interest of the Debtor.

With a 49.76% interest in the Debtor, Boketo may be the largest single shareholder of the Debtor, but Boketo does not own a majority of the stock. As the court found in *Feldheim v. Sims*, a case from Illinois applying Delaware corporate law, "[a] majority shareholder, or a group of shareholders who combine to form a majority, has a fiduciary duty to the corporation and to its minority shareholders if the majority shareholder dominates the board of directors or controls the

---

[44]*McMullin v. Beran*, 765 A.2d 910, 916 (Del. 2000)(footnotes omitted).

[45]*Id.*

**EXHIBIT A**

corporation.'"[46]  No proof was introduced to show that Boketo had joined other shareholders in order to form a majority to control the FSNA Board.  Consequently, as a minority shareholder, Boketo does not owe a fiduciary duty to the Debtor.

### c.  Contrary to the Laws of Delaware?

The Debtor also asserts that § 4(j) violates § 102(b)(1) of the Delaware Code.  Section 102(b)(1) provides for the contents of a certificate of incorporation, and states:

> (b) In addition to the matters required to be set forth in the certificate of incorporation by subsection (a) of this section, the certificate of incorporation may also contain any or all of the following matters:
>
>> (1) Any provision for the management of the business and for the conduct of the affairs of the corporation, and any provision creating, defining, limiting and regulating the powers of the corporation, the directors, and the stockholders, or any class of the stockholders, or the governing body, members, or any class or group of members of a nonstock corporation; if such provisions are not contrary to the laws of this State.[47]

In other words, under § 102(b)(1), a certificate of incorporation may contain a provision limiting or restricting the powers of a corporation, its board of directors or stockholders as long as such provision is not contrary to the laws of the State of Delaware.

Sections 102(b)(1) and 141(a) were addressed in a decision from a chancery court in Delaware.  In *Jones Apparel Group v. Maxwell Shoe Company,* the chancery court considered the validity of a provision in the Maxwell Shoe Company's charter.  The court held:

> First, I begin by noting that Delaware's corporate statute is widely regarded as the most flexible in the nation because it leaves the parties to the corporate contract (managers and stockholders) with great leeway to structure their relations, subject to relatively loose statutory constraints and to the policing of director misconduct

---

[46]*Feldheim v. Sims,* 800 N.E.2d 410, 421 (Ill. App. 1 Dist. 2003)(citations omitted).

[47]Del. Code Ann. tit. 8, § 102.

**EXHIBIT A**

through equitable review.  As Professor Folk noted in his comments on the 1969 amendments to the [Delaware General Corporation Law (DGCL)], and particularly on the enabling feature of § 141(a), "the Delaware corporation enjoys the broadest grant of power in the English-speaking world to establish the most appropriate internal organization and structure for the enterprise." Sections 102(b)(1) and 141(a) are therefore logically read as important provisions that embody Delaware's commitment to private ordering in the charter. By their plain terms, they are sections of broad effect, which apply to a myriad of issues involving the exercise of corporate power.

In this connection, the approach of *Sterling [v. Mayflower Hotel Corp.[48]]* in defining the words "contrary to the laws of this State" has much to commend it.  That approach is a cautious one, which does not lightly find that certificate provisions are unlawful.  Although *Sterling* dealt with a supposed conflict between a charter provision and a common law rule, its approach is equally valid where, as here, the "law" to which the charter provision is assertedly [*sic*] contrary is a statute.  In that situation, the court must first apply settled rules of statutory construction to determine whether the provision violates the statute, and, if those rules do not yield a clear result, the court must next carefully consider the statutory text at issue and the policy values at stake as reflected not only in the DGCL but also in our common law, and only invalidate a certificate provision if it "transgress [es]"-i.e., vitiates or contravenes-a mandatory rule of our corporate code or common law. Although the identification of what is mandatory might at times be difficult, the *Sterling* approach leaves the space for private ordering that the General Assembly's adoption of §§ 102(b)(1) and 141(a) clearly contemplated.

. . . .

[T]he court must determine, based on a careful, context-specific review in keeping with *Sterling*, whether a particular certificate provision contravenes Delaware public policy, i.e., our law, whether it be in the form of statutory or common law.

*Jones Apparel Grp., Inc. v. Maxwell Shoe Co.*, 883 A.2d 837, 845–46, 848 (Del. Ch. 2004)(footnotes omitted).

While not applying Delaware law, the debtor in *Squire Court*[49] also argued that the board of directors had the authority to file bankruptcy and not the shareholders with the golden share. The

---

[48]93 A.2d 107 (Del. 1952).

[49]*Supra* note 27, at 17.

**EXHIBIT A**

debtor argued that "a bona fide equity owner must hold a fiduciary position before it can vote on whether to file a bankruptcy petition."[50]  The debtor, however, failed to provide the court with any authority on this point.  In response to the debtor's argument, the court in *Squire Court* stated:

> A corporation typically delegates the board of directors authority to manage the business and affairs of the corporation.  The authority does not originate with the board of directors but comes to it by corporate delegation, whether by default statutory provisions or corporate governance documents.  Cases holding that the decision to file for bankruptcy rests with a corporation's board of directors focus on the delegation of authority, not the fact that the directors have fiduciary duties.  In other words, a board of directors has authority to decide whether the entity will file for bankruptcy because that authority is delegated to the board.
>
> Just as the authority of a board of directors is delegated, likewise a general partner has authority delegated to it to act on behalf of the partnership. Sometimes that authority may include the power to file for bankruptcy.  Here, however, Squire Court did not delegate to NHDC Texas the power to file for bankruptcy on its own initiative.  Instead, the partners retained for themselves, acting by unanimous consent, the decision whether to file a bankruptcy petition.
>
> It is one thing to look past corporate governance documents and the structure of a corporation when a creditor has negotiated authority to veto a debtor's decision to file a bankruptcy petition; it is quite another to ignore those documents when the owners retain for themselves the decision whether to file bankruptcy.  It is one thing for the courts to overrule a creditor that seeks to block a debtor from filing bankruptcy; it is quite another for the courts to overrule the owners of the entity.

*In re Squire Court*, 574 B.R. at 707–08 (citations omitted).

Like the partners in *Squire Court*, when the FSNA Board included § 4(j) in its Certificate of Incorporation, the FSNA Board made the decision to take the authority for filing bankruptcy out of its hands and give it to Boketo.  In other words, as authorized by § 102(b)(1), the FSNA Board made the decision to delegate to an equity holder its authority to decide whether the Debtor would file bankruptcy.

The Debtor has not cited to a case which holds that a golden share or blocking provision

---

[50]*Squire Court,* 574 B.R. at 707.

EXHIBIT A

given to an equity holder contravenes Delaware law.  Since it appears that the validity of a golden share/blocking provision has not been addressed by the courts in Delaware, this Court will not find that an golden share/blocking provision is invalid under Delaware law.  Instead, this Court will leave it to the courts of the State of Delaware to decide that issue.

The Debtor has not show where § 4(j) "contravenes Delaware public policy . . . in the form of statutory or common law."[51]  For these reasons, the Court will not look past the Debtor's Certificate of Incorporation which gives the decision to file bankruptcy to Boketo.  Instead, the Court will uphold the validity of § 4(j) as an act taken "'on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'"[52]

## CONCLUSION

The Debtor asserts that the Motion was untimely filed and should be dismissed.  The Court found, however, that the question of whether a court has jurisdiction over a debtor may be raised at any time.  Therefore, the Motion and Joinder were not untimely filed nor are they barred by the doctrines of waiver, estoppel or laches.

A review of the case law shows that a golden share/blocking provision will be invalid and contrary to federal public policy if it is in the hands of a creditor.  If a substantial equity owner holds such a provision, however, the golden share/blocking provision will be enforced.  At the time the petition was filed, the Macquarie Parties clearly were creditors of the Debtor.  Consequently, to the extent they claim a golden share/blocking provision under § 4(j), that provision is contrary to federal public policy and is not enforceable.  Boketo, however, is a substantial equity owner and not a

---

[51]*Id.* at 848.

[52]*McMullin*, 765 A.2d at 916 (footnote omitted).

**EXHIBIT A**

creditor.  Therefore, § 4(j) is valid and enforceable unless contrary to Delaware law.

The FSNA Board made the decision to take the authority to file bankruptcy from the FSNA

Board and give it to one of its substantial equity holders, Boketo.  The Debtor failed to prove that

§ 4(j) contravenes Delaware law and failed to provide the Court with case law which holds that a

golden share/blocking provision is contrary to Delaware law.  Consequently, the Court finds that

§ 4(j) is not contrary to Delaware law and is valid.

At trial, the Debtor did not present proof to show that Boketo consented to the bankruptcy

filing.  For these reasons, the Court finds that the bankruptcy was filed without corporate authority,

and therefore, the case should be dismissed on Boketo's Joinder.  *Price*, 324 U.S. at 106.

To the extent the Court has not addressed any of the parties' other arguments or positions,

it has considered them and determined that they would not alter the result.

A separate judgment consistent with this Opinion will be entered in accordance with Rule

7054 and Rule 9014 of the Federal Rules of Bankruptcy Procedure.

**##END OF FINDINGS##**

**EXHIBIT A**

Form ntcdsm (Rev. 12/15)

# UNITED STATES BANKRUPTCY COURT
## Southern District of Mississippi

Case No.:  17−02316−ee
Chapter:  11

In re:

    Franchise Services of North America Inc.
    1052 Highland Colony Parkway
    Suite 204
    Ridgeland, MS 39157

Last four digits of Social−Security or Individual Tax−Payer−Identification (ITIN) No(s)., (if any):

Employer Tax Identification No(s). (if any):
    98−0559163

## Notice of Dismissal

You are hereby notified that an Order Dismissing the above case was entered on December 18, 2017.

Dated: 12/18/17

Danny L. Miller, Clerk of Court
501 East Court Street, Suite 2.300
P.O. Box 2448
Jackson, MS 39225−2448
601−608−4600

**EXHIBIT A**

---

SO ORDERED,

*Edward Ellington*

Judge Edward Ellington
**United States Bankruptcy Judge**
**Date Signed: December 18, 2017**

**The Order of the Court is set forth below. The docket reflects the date entered.**

---

## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
### SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **FRANCHISE SERVICES OF NORTH** | **CASE NO. 1702316EE** |
| **AMERICA, INC.** | |

### FINAL JUDGMENT

Consistent with the Court's Opinion dated contemporaneously herewith,

**IT IS THEREFORE ORDERED** that the *Motion of the Macquarie Parties to Dismiss the Chapter 11 Case for Petition Having Been Filed Without Proper Corporate Authority* (Dkt. #121) filed by Macquarie Capital (USA) Inc., Michael John Silverton, and Daniel Raymond Boland is not well taken and is hereby denied.

**IT IS FURTHER ORDERED** that the *Joinder of Boketo LLC to the Motion of the Macquarie Parties to Dismiss the Chapter 11 Case for Petition Having Been Filed Without Proper Corporate Authority* (Dkt. #168) is well taken and is hereby granted and that the above-styled case is hereby dismissed.

### ## END OF JUDGMENT ##

**EXHIBIT A**

# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

In re:                                    )
                                          )
FRANCHISE SERVICES OF NORTH               )
     AMERICA, INC.                        )          CASE NO. 17-02316-EE
                                          )          Chapter 11
     Debtor                               )
_____ )

FRANCHISE SERVICES OF NORTH
     AMERICA, INC.                                                  APPELLANT

v.

MACQUARIE CAPITAL (USA) INC., MICHAEL
JOHN SILVERTON, DANIEL RAYMOND BOLAND,
AND BOKETO LLC                                                      APPELLEES


**DEBTOR'S REQUEST FOR CERTIFICATION PURSUANT TO
28 U.S.C. § 158(d)(2)(A) OF A DIRECT APPEAL TO
THE COURT OF APPEALS FOR THE FIFTH CIRCUIT OF THIS COURT'S
ORDER GRANTING BOKETO'S MOTION TO DISMISS BANKRUPTCY CASE**
[Dkt. ## 253, 254]

Franchise Services of North America, Inc., Debtor, Debtor-in-Possession, and Appellant

(the "*Debtor*" or "*Appellant*"), has appealed this Court's *Memorandum Order* [Dkt. # 253],

dated December 18, 2017, and its *Final Judgment* [Dkt. # 254], dated December 18, 2017

(together, the "*Dismissal Order*").  In its Final Judgment this Court denied the *Motion to Dismiss*

[Dkt. # 121] filed by Macquarie Capital (USA) Inc., Michael John Silverton, and Daniel

Raymond Boland (collectively, the "*Macquarie Parties*"), but it granted the *Joinder* [Dkt. # 168]

filed by Boketo LLC ("*Boketo*").  The Debtor/Appellant respectfully requests that this Court

certify the following two questions of law arising from the Dismissal Order for direct appeal to

the United States Fifth Circuit Court of Appeals:

**EXHIBIT B**

- 1 -

## QUESTIONS FOR CERTIFICATION

**1.     Federal public policy**

Is it against federal public policy for a creditor to demand and receive the ability to block a debtor corporation from taking bankruptcy if the mechanism the creditor uses to do that is (1) to use a controlled subsidiary to make a minority equity investment in the debtor, and (2) to obtain a provision in the certificate of incorporation giving the subsidiary a power to block any bankruptcy filing?

**2.     Delaware fiduciary duty**

In the alternative, where a certificate of incorporation gives a minority shareholder the right to veto a bankruptcy filing by the corporation, does Delaware law impose on the minority shareholder a fiduciary duty to exercise that right in the best interests of the corporation, and not in the best interests of an affiliated third party in litigation with the corporation?

## STANDARD FOR CERTIFICATION

Section 158(d)(2)(A) of Title 28 allows this Court to certify these questions of law to the Fifth Circuit Court of Appeals under the following three circumstances:

> (i) the judgment, order, or decree involves a question of law as to which [a] there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or [b] involves a matter of public importance;

> (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions . . .

28 U.S.C. § 158(d)(2)(A) (i)-(ii) (Brackets added.).

## REASONS WHY THE QUESTIONS SHOULD BE CERTIFIED

This Court, in a thorough and careful opinion, has concluded, Opinion at 25, as follows:

> *     Federal public policy prohibits a corporation from contracting with a creditor to waive the right of the corporation to take bankruptcy.  Allowing such contracts

**EXHIBIT B**

upends federal bankruptcy priorities and, if permitted, would become a widespread means for creditors to defeat the constitutional right to take bankruptcy. Opinion at 11.

      \* The policy will not be enforced if the creditor acts through a "substantial equity owner" which is its subsidiary.

      \* Under Delaware law, a minority shareholder in possession of a blocking veto does not owe a fiduciary duty to the corporation to exercise that veto in the best interest of the corporation and may exercise it for the benefit of a third party in litigation with the corporation.

The Court's holding gives rise to the questions the Debtor/Appellant seeks to have certified to the Fifth Circuit because there is no controlling authority within the Fifth Circuit, the questions are of paramount importance, and there is a conflict of authorities between the Court's rulings and the authoritative rulings of other federal and state tribunals and appellate court.

**1.    There is no controlling decision of the Fifth Circuit or the United States Supreme Court.**

The Opinion at pages 11-18 marshals the principal cases that have addressed the federal public policy question. None of those cases is a decision of the Fifth Circuit or the United States Supreme Court.

The Opinion does not cite any case that holds that a minority shareholder with a blocking right does not owe a fiduciary duty under Delaware law to exercise that right in the best interests of the corporation. The court in *In re Intervention Energy Holdings, LLC*, 553 B.R. 258, 265 (Bankr. D. Del. 2016), declined to reach the Delaware law issue insofar as it concerned a shareholder in a limited liability company. For these reasons, it would appear that there are no directly controlling decisions on this issue from the Fifth Circuit, the U.S. Supreme Court, or the Delaware courts.

**EXHIBIT B**

For this reason alone, certification would be warranted.

2.      **The questions are important.**

Corporate charters that strictly prohibit the filing of a bankruptcy petition "are usually deemed an agreement not to file bankruptcy, and are manifestly void as against public policy." 2 COLLIER ON BANKRUPTCY ¶301.08[2] (2016). The Court has recognized the potential danger such an agreement or charter presents. If allowed, creditors may insist on such an agreement in a wide variety of cases and so defeat the constitutional and federal statutory right to take bankruptcy. If such agreements are to be allowed, it should only be after the approval of federal courts at the highest level.

It should be noted that while, in this case, the Court has allowed a 49.7% shareholder to block a bankruptcy petition, it has cited with approval a case where the objecting shareholder's share was only 20%. *See In re Global Ship. Sys., LLC*, 391 B.R. 193, 203 (Bankr. S. D. Ga. 2007). The Court's opinion thus leaves open the possibility that even smaller interests will suffice to defeat the federal policy.

Finally, the supremacy of federal law is a matter of public importance. "[A] 'matter of public importance' should transcend the litigants . . . [and include] such things as the constitutionality of a provision of title 11 [or] the applicability of nonbankruptcy law to matters arising in a bankruptcy case . . . " *In re MPF Holding U.S. LLC*, 444 B.R. 719, 726 (Bankr. S.D. Tex. 2011) (citing 1 COLLIER ON BANKRUPTCY ¶ 5.06[5][b]).

3.      **There is a conflict among authorities.**

Lawyers who represent creditors and debtors need certainty in what one of the decisions at issue here has called their "playbook." Because of the conflicts present here, appellate review is needed, as the Fifth Circuit has said, to "to generate binding appellate precedent in bankruptcy,

**EXHIBIT B**

whose caselaw has been plagued by indeterminacy." *In re Pac. Lumber Co.*, 548 F.3d 229, 241-242 (5th Cir. 2009).

The 'indeterminacy' is apparent from the Court's opinion. The Court draws its "it can be done through a shareholder" rule from its reading of a series of six other cases involving creditors with interest in corporations, only one of which, *Global Ship*, actually enforced a blocking provision.[1] One of the cited cases, by this Court's own description, is directly contrary to this Court's holding. Speaking of *In re Lexington Hospitality Group, LLC*, 2017 WL 4118117 (Bankr. E.D. Ky. Sept. 15, 2017), this Court describes how the creditor in that case installed a controlled shareholder with a blocking right:

> Contemporaneously with the execution of the loan documents, an amended operating agreement was executed admitting 5532 Athens, an entity wholly-owned by PCG, as a member of the debtor LLC with a 30% membership interest . . . . The amended operating agreement also included several provisions which limited the debtor's ability to file bankruptcy and required a 75% vote of the members.

Opinion at 17. On these facts, the bankruptcy court refused to enforce the blocking provision for reasons, which, if honored here, would call for a different result. As this Court put it:

> The court found that PCG's complete control over Athens gave it total control to block any bankruptcy filing. "Unlike a member or manager, PCG has no restrictions and no fiduciary duties to [the debtor] that might limit self-interested decisions that ignore the best interests of the [debtor]."

*Id.* at 18, quoting *Lexington Hospitality Group*, 2017 WL 4118117 at *6. In contrast, this Court has now said that a shareholder, even one acting at the behest of an controlling creditor, can exercise a blocking right and no fiduciary duty is owed. On the later point, the Court's opinion is also in conflict with *In re Lake Michigan Beach Pottawattamie Resort LLC*, 547 B.R. 899, 913 (Bankr. N. D. Ill. 2016), which said the "essential playbook" for the exercise of a blocking right

---

[1] The Court also relied on *In re Squire Court Partners Limited Partnership*, 574 B.R. 701, 708 (E.D. Ark. 2017), but there the blocking power belonged to the partners in a partnership and it was not a case where "a creditor . . . seeks to block a debtor from filing bankruptcy."

EXHIBIT B

required the exercise of a fiduciary duty to the corporation. Boketo's "playbook" fails to require that Boketo consider any such fiduciary duties.

Moreover, to the extent the Court holds that Macquarie may do indirectly through Boketo what Macquarie could not do directly on its own, the Court's opinion violates the long standing principle, stated in yet another opinion invalidating a blocking provision, that "[p]arties cannot accomplish through 'circuity of arrangement' that which would otherwise violate the Bankruptcy Code." *National Hockey League v. Moyes*, 2015 WL 7008213 (D. Ariz. 2015), quoting *Nat'l Bank of Newport v. Nat'l Herkimer Cnty Bank*, 225 U.S. 178, 184 (1912).

Finally, while the appellate court need not reach the state law issue, there is also reason to believe that this Court's analysis of Delaware law is miscast. Under Del. G.C.L. § 102(b)(1), a certificate of incorporation cannot be "contrary to the laws of this State," a phrase which has been interpreted to mean there can be no "conflict with Delaware public policy." *Jones Apparel Grp. Inc. v. Maxwell Shoe Co.*, 883 A.2d 837, 851 (Del. Ch. 2004).

The Court found no public policy forbids the *grant* of a blocking right to a shareholder but failed to consider that the issue here is whether the *exercise* of a blocking right by a minority shareholder is constrained by a fiduciary duty to the corporation.

In Delaware, a shareholder with a blocking right owes a fiduciary duty to the company when it exercises that right. In Delaware, where a "minority blockholder's power" is so "potent that independent directors . . . cannot freely exercise their judgment," the blockholder "owes a fiduciary duty to a company." *In re PMTS Liquidating Corp.*, 526 B.R. 536, 543 (Bankr. D. Del. 2014) (citations omitted); *see also In re KKR Fin. Holdings LLC S'holder Litig.*, 101 A.3d 980, 995 (Del. Ch. 2014), *aff'd sub nom. Corwin v. KKR Fin. Holdings LLC*, 125 A.3d 304 (Del. 2015) (shareholder in control owes fiduciary duty to other shareholders); *Ivanhoe Partners v.*

EXHIBIT B

*Newmont Min. Corp.*, 535 A.2d 1334, 1344 (Del. 1987) ("Under Delaware law a shareholder owes a fiduciary duty only if it owns a majority interest in or exercises control over the business affairs of the corporation.").

Because in this case Boketo has exercised its right not for the benefit of the Debtor but for the benefit of Boketo's parent – a creditor with whom the Debtor is in litigation – Boketo's exercise violates its fiduciary duty, offends Delaware public policy, and should not be enforced.

## CONCLUSION

For these reasons, this Court should certify the questions posed by this Court's opinion and stated above for direct appeal to the United States Court of Appeal for the Fifth Circuit under 28 U.S.C. § 158(d)(2)(A).

THIS, the 22nd day of December 2017.

Respectfully submitted,

**FRANCHISE SERVICES OF NORTH AMERICA, INC.**

By: */s/ Christopher R. Maddux*
BUTLER SNOW LLP
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
Telephone: (601) 948-5711
Steve.Rosenblatt@butlersnow.com
Chris.Maddux@butlersnow.com

ATTORNEYS FOR THE DEBTOR

EXHIBIT B

## CERTIFICATE OF SERVICE

I certify that the foregoing pleading was filed electronically through the Court's ECF system and served electronically on all parties enlisted to receive service electronically and that I also served a copy of this pleading by electronic mail as follows:

Kevin H. Marino, Esq.
John D. Tortorella, Esq.
John A. Boyle, Esq.
Marino, Tortorella & Boyle, P.C.
437 Southern Boulevard
Chatham, New Jersey 07928-1488
kmarino@khmarino.com
JTortorella@khmarino.com
jboyle@khmarino.com

Brooks Eason, Esq. (Miss. Bar No. 5286)
Alan L. Smith, Esq. (Miss. Bar No. 10345)
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
One Eastover Center
100 Vision Drive, Suite 400
Jackson, Mississippi 39211
beason@bakerdonelson.com
asmith@bakerdonelson.com

Dated: December 22, 2017.

/s/ Christopher R. Maddux
CHRISTOPHER R. MADDUX

39880693v4

**EXHIBIT B**